JOSEPH GILLOTT, Respondent, *v.* RICHARD ESTERBROOK et al., Appellants.

A manufacturer has the right to distinguish the goods manufactured by him by any peculiar mark or device he may select and adopt, by which they may be known as his in the market; and he is entitled to the protection of a court of equity, in the exclusive use of the peculiar marks or symbols appropriated by him, designating or indicating the true *origin or ownership* of the article to which they are affixed.

Plaintiff, a manufacturer of steel pens, had for many years manufactured a peculiar pattern on which was impressed the figures "303," and the words "Joseph Gillott, extra fine." The pens were put up in paper boxes, with a label on top, containing the same name and numerals. The pens were known and ordered by dealers as "303" pens. Such figures did not express any quality or size of the pen, but were selected arbitrarily by plaintiff to distinguish the pattern or character of pen to which it was applied.

Defendants began the manufacture and sale of a steel pen, closely resembling plaintiff's pen in every particular, on which was stamped "303," and "Esterbrook & Co., extra fine." The pens were put up in boxes of the same size and similar to those of plaintiff, with a label containing the same words and figures, except "Esterbrook & Co." instead of "Joseph Gillott."

In an action brought by plaintiff to restrain defendants from using the figures "303" upon these pens and boxes,—*Held*, that plaintiff had acquired the right to the exclusive use of those figures as a trade mark, and was entitled to the relief sought.

(Argued September 29, 1871; decided January Term, 1872.)

APPEAL from a judgment of the General Term of the Supreme Court in the first judicial district, affirming a judgment entered on the decision of the court on a trial at Special Term.

The action was brought by the plaintiff to restrain the defendants by injunction, among other things, from using the number "303" on steel pens manufactured by them, and on small paper boxes in which they are put up, on the allegation in his complaint that he had for sixteen years and upwards kept on sale and sold a particular kind and style of pen, made by him, and put up in boxes imitated by the defendants, having the said number "303" impressed on the said pen, and placed on such boxes, with the plaintiff's name as his trade mark.

The material facts sufficiently appear in the opinion. The case is reported below in 47 Barb., 455.

Judgment was rendered restraining the defendants from infringing or using the said trade mark of the plaintiff, and from making or selling pens with said number "303" impressed thereon, or on the boxes or packages containing the same for sale.

*John Sherwood* for the appellants. No one can appropriate a word in general use as his trade mark and restrain others from using it. (*Corwin* v. *Daly*, 7 Bos., 222; quoted in Upton on Trade Marks, 198; *Burnett* v. *Phalon*, 12 Abb. Pr., 186; 4 Bos., 622; aff'd in Ct. of Ap., 5 Abb. Pr. N. S.,

212; 3 Keyes, 594.) Words and figures indicative of the "*kind, character or quality*" of the thing cannot be used exclusively as a trade mark. (Upton on Trade Marks, 208, 209; *Gillott* v. *Esterbrook*, 47 Barb., 479.)

*F. R. Sherman* for the respondent. This court will not review the findings of fact. (*Marshall* v. *Smith*, 20 N. Y., 251; *Loeschick* v. *Baldwin*, 38 id., 326; *McCabe* v. *Brayton*, id., 196; *Fellows* v. *Northrop*, 39 id., 117; *Ostrander* v. *Fellows*, id., 305, and authorities cited.) Single letters and figures as well as words may be adopted as a trade mark. (*Newman* v. *Alvord*, 49 Barb., 589 [1867], Cement case; *Stokes* v. *Landgraff*, 17 id., 612; *Blois* v. *Bloomer*, 23 id., 609; *Clark* v. *Clark*, 25 id., 79; *Brooklyn W. L. Co.* v. *Masury*, 25 id., 418; *Howard* v. *Henriques*, 3 Sand. Sup. C. R., 727; *Burnett* v. *Phalon*, Court of Appeals, 1867, 5 Abbott's R., N. S., 212.) The use of the figures 303 was an infringement, although defendants used their own firm name. (*Goutt* v. *Aleplogha*, 25 Am. Jur., 277; *Seixo* v. *Provezende*, 14 Law Times, 315; *Newman* v. *Alford*, 49 Barb., 589; *Burnett* v. *Phalon*, 5 Abb. N. S., 212.)

LOTT, Ch. C. A manufacturer has the right to distinguish the goods manufactured by him by any peculiar mark or device he may select and adopt, by which they may be known as *his* in the market, and thereby secure to himself the profits arising from the fact that they are of his manufacture, and he is entitled to the protection of a court of equity in the exclusive use of the peculiar marks or symbols, appropriated by him, designating or indicating the *true origin or ownership* of the article to which they are affixed against the adoption or imitation thereof by another, so as to mislead the public as to such origin or ownership, and thus effect the sale of his goods as those of the party whose trade mark is so adopted or imitated.

See *Burnett* v. *Phalon* (3 Keyes' Rep., 594), and the cases there cited, and particularly the opinion of DUER, J., in

that of the *Amoskeag Manufacturing Company* v. *Spear* (2 Sand. S. C. Rep., 599), in which the question is examined with great ability, and the rules applicable to it are clearly defined.

Upon the application of the above principles to this case, the facts found by the judge, who tried the issues therein, entitled the plaintiff to the relief granted to him by the judgment rendered at Special Term. They show that he had, for many years prior to the commencement of this action, manufactured at Birmingham, in England, and sent to the United States for sale, steel pens of various descriptions, and among them, as early as in the year 1839, one of a peculiar style or pattern, on which was impressed the number "303" and the words "Joseph Gillott, extra fine." The said number was so impressed in said pen by the plaintiff before it had been used by others to distinguish such pattern or character of pen from other patterns made by him, and was adopted and used by him as his trade mark for said pen in connection with his name and the words "extra fine," and it had become established and well known as such. The said figures were selected arbitrarily by the plaintiff, and of themselves expressed no quality or size of the pen, and no other pens were then used which had said numerals impressed thereon. Since the year 1842 the said pens have been put up in block paper boxes holding one gross each, on the top of which is a label, in the centre whereof is the plaintiff's name in larger letters than other prints thereon, and above the name is "No" (meaning number), and below it in large and conspicuous type are the said numerals "303." This pen so marked had become well known to the trade and dealers as a valuable and popular pen; it was in great demand and the most prominent in the market, producing large sales at prices from twenty-five per cent to one hundred per cent higher than the pens made in imitation thereof, or of other pens with the same mark or number "303." It was known and ordered by stationers and other dealers by its said

number "303" to distinguish it from other pens made by the plaintiff of other patterns and descriptions.

It is also shown by those findings that the defendants, except Richard Esterbrook, Jr., under the name of R. Esterbrook & Co., are manufacturers of steel pens at Camden, New Jersey, where they commenced the business in 1859 or 1860; that they manufacture and sell a pen which, in size, shape, color, pattern, flexibility and fineness of point so closely resembles the said pen of the plaintiff as to require an expert or adept to distinguish them in those respects; that they have also impressed upon their said pen, in the same place as upon the plaintiff's said pen, the said numeral "303," and the name of the defendants' firm, "Esterbrook & Co.," and the same words, "extra fine," as upon the said pen of the plaintiff; that they also put up their pens in paper boxes of the same size and similar in other respects to those of the plaintiff, and with the same words printed on the label as on his, except the name, which is "Esterbrook & Co." instead of "Joseph Gillott," and above the name on the label, in like manner as on the plaintiff's, is the word "No." and below the name, equally or more conspicuous than on the plaintiff's, are the numerals "303." There is the word "caution" on the bottom of the boxes of both the plaintiff and the defendants'; the object of each, in different terms, is to call the attention of the public to the merits of their respective pens. The said defendant, Richard Esterbrook, Jr., was the agent of the other defendants for selling their pens in the city of New York. It is further found by the judge "that the said use by the defendants of said numerals "303" was with a knowledge by them of the rights of the plaintiff to the same, and with the intent to obtain for themselves the profits and advantages to which the plaintiff was exclusively entitled in the use of his said trade mark, and to mislead the public and defraud the plaintiff in that respect."

The preceding statement of facts clearly shows that the said number was selected and used by the plaintiff as his trade mark, to indicate, in connection with his name, the

Statement of case.

origin and ownership of the said pens so manufactured by him, and not to designate their quality merely, and that the defendants, by the adoption thereof, have done it in fraud of his rights, and the plaintiff upon all the facts found by the judge was entitled to the injunction granted to him.

It is, however, claimed by the defendants that the plaintiff has knowingly permitted his said trade mark to be used by other manufacturers for many years, without interference, and that he has thereby lost the right to the exclusive use thereof. This claim is not sustained or in any manner warranted by the findings of the judge. He does indeed find that after the said trade mark had been adopted by him, and the same had been established and become well known as such, that stationers and others in the city of New York had, for fifteen years before the trial of this action, advertised and sold pens similar in appearance as " 303 extra fine pens," and as " manufactured under their own superintendence," when in fact they had procured them to be manufactured for them in Birmingham, England, or by the defendants in this country; but he expressly finds " that the plaintiff had no knowledge of said practice, and did not authorize or acquiesce in the same." He is, consequently, not affected thereby. It follows, from the views above expressed, that the judgment appealed from should be affirmed with costs.

All concur, LEONARD, C., not sitting.

Judgment affirmed.