AMERICAN SOLID LEATHER BUTTON COMPANY *vs.* ANTHONY, COWELL & COMPANY *et als.*

Numbers arbitrarily chosen may be taken as trade-marks, and will be protected as such. But numbers already in use, and known to the trade in connection with given styles of goods, cannot be appropriated to his exclusive use by a maker of such styles of goods.

BILL IN EQUITY for an injunction and an account.

*July* 3, 1886. STINESS, J. The complainant is a manufacturer of buttons and nails with solid leather heads. In order to distinguish the different styles which it manufactures, it has assigned certain numerals, arbitrarily chosen, *e. g.* 30, 40, 60, 70, 111, etc., to designate different styles of heads on its advertising cards and packing-boxes. The several styles made by the complainant have become associated with and known by these numerals in the trade, and the numerals are commonly made use of in orders and other designations of a style desired to be referred to.

The defendants, Anthony, Cowell, & Co. have procured from other parties nails of different styles, similar to those made by the complainant, and have designated them by the same numerals adopted by the complainant to designate the corresponding styles of its manufacture, whereupon the complainant, claiming the several numerals adopted by it as its trade-mark, brings this bill for an injunction and account. The first question presented for our decision is, whether the use of an arbitrary combination of figures to designate the styles of goods which a person makes, is entitled to protection. The defendants claim that no protection can be given, because such figures, by denoting the style or quality simply, and not origin of the goods, deceive nobody, and hence the rights of the complainant are not infringed. There is some diversity in decisions upon this point, arising mainly from different assumptions of fact by the courts. Undoubtedly, if it be assumed that a given mark indicates quality only, and not origin, it will follow that purchasers of goods so marked have not been misled thereby into the supposition that they were buying a complainant's goods, and hence he would show no cause for relief. All of the cases cited by the defendants, in support of their claim that numbers indicating style or quality cannot be protected, are

based upon such an assumption. Where the premises are true no fault can be found with the conclusion. But it by no means follows, as a rule of law, that marks indicating style or quality may not also indicate origin, and thus be a subject of trade-mark. A person has the right to affix to his goods any device, symbol, or name which he may invent, to distinguish such goods from those made by other people. When the symbol becomes known, in connection with his name, it serves as a sign and pledge of the origin of the goods. People do not often stop to read all that may be printed on a label ; nor do they always know the changes that are made in firms or business names. Hence it is that the sight of a familiar symbol inducing one to purchase goods to which the symbol does not properly belong, to the injury of him who devised it to mark his own goods, is the *gravamen* of the law of trade-marks.

Within limits which are well defined, a combination of letters or figures, arranged for convenience or to attract attention, may serve the purpose of a trade-mark, as well as a device invented or arbitrarily selected. So a person may have different symbols for different grades of goods, which, in the same way, will indicate both quality and origin with respect to the goods so marked.

A manufacturer may adopt such symbols, not simply to mark *a* style or quality, but *his* style and *his* quality as well. He is entitled to have *his* style and *his* quality protected from misrepresentation, and to have the benefit of any favorable reputation they may have gained. The doctrine applicable to cases of this character is clearly set forth in *Shaw Stocking Co.* v. *Mack*, 21 Blatchf. 1, 6, as follows : "It is very clear that no manufacturer would have the right exclusively to appropriate the figures 1, 2, 3, and 4, or the letters A, B, C, and D, to distinguish the first, second, third, and fourth quality of his goods respectively. Why ? Because the general signification and common use of these letters and figures are such that no man is permitted to assign a personal and private meaning to that which has, by long usage and universal acceptation, acquired a public and generic meaning. It is equally clear, however, that if, for a long period of time, he had used the same figures in combination, as ' 3214,' to distinguish his own

goods from those of others, so that the public had come to know them by these numerals, he would be protected. The courts of last resort in Connecticut, in Massachusetts, and in New York have distinctly held this doctrine, *Boardman* v. *Meriden Britannia Co.* 35 Conn. 402; *Lawrence Co.* v. *Lowell Mills*, 129 Mass. 325; *Gillott* v. *Esterbrook*, 48 N. Y. 374, the numerals sustained being respectively ' 2340,' ' 523,' and ' 303.' " In this case the numerals " 830 " had been adopted to mark a style of hose made by the complainant, viz. a mottled drab; and although the label used by the defendants bore their own and not the complainant's name, an injunction was granted against their use of the numerals, upon the ground " that the complainant had used these numerals long enough to convey to any one versed in the nomenclature of the trade a precise understanding of what goods were intended, when the numerals were used alone, disconnected from any intrinsic information." The defendants in the case last quoted, as in the case before us, were dealers and not manufacturers.

In *Manufacturing Co.* v. *Trainer*, 101 U. S. 51, strongly relied on by the defendants, the court based its decision upon the fact that the letters " A. C. A." denoted quality simply, and not origin. Judge Clifford dissented from this conclusion of fact. If, as stated in that case, indication of origin is " entirely overborne by the patent fact that the label discloses the name in full of the manufacturers," we do not see why any trade-mark, coupled with the name of the real manufacturers, might not be used, for, according to the language of the opinion, the indication of origin by the use of the trade-mark would be " overborne " by the disclosure of the maker's name. We do not think the court meant that the case should go to this extent. It simply found that the letters in that case did not indicate origin, and hence dismissed the bill.

Applying the rule which we have here recognized, we come to the questions of fact in this case. It appears from the testimony that the numbers "60" and "70" were used by T. F. N. Finch, and had become known· to the trade as applied to the same styles, before the complainant used them. If this be so, the complainant cannot appropriate these numbers to its exclusive use. The only other numbers proved to have been used by the defend-

ants, Anthony, Cowell & Co., are "30" and ".111." We think these numbers indicate origin as well as style. The fact that orders for goods refer to numbers, which have become associated with a particular style of nail only by the complainant's association of the number with the style, raises a natural inference that persons ordering by that number suppose they are ordering both goods and style of complainant's make. We therefore think that in the use of these numbers, as against the defendants, Anthony, Cowell & Co., the complainant is entitled to protection according to the prayer of the bill. As to the other defendants, in the absence of testimony to show their use of any numbers claimed by the complainants other than "60" and "70," the bill must be dismissed.

*W. W. & S. T. Douglas*, for complainant.

*Warren R. Perce*, for respondent.

NOTE. — For a commentary on this case see Amer. Law Register, N. S. vol. 26, p. 173, issue of March, 1887.