ELLEN M. REGIS & another *vs.* H. A. JAYNES AND COMPANY & others.

Suffolk.   January 21, 1904. — April 11, 1904.

Present: KNOWLTON, C. J., LATHROP, BARKER, HAMMOND, & BRALEY, JJ.

*Equity. Pleading and Practice,* Master's report.   *Trade Name.   Equity Jurisdiction.*

Where a master's report does not state all the evidence, the master's findings of fact cannot be revised if warranted by the evidence stated in his report.

One, who has established the right to the use of the word "Rex" as a trade mark or trade name designating dyspepsia tablets, may maintain a suit in equity against a person using the word "Rexall" to designate similar dyspepsia tablets, although the defendant began the use of that word innocently without intention of imitating the trade name of the plaintiff, if, after notice of injury to the plaintiff, the defendant continues to use the word "Rexall" in such a way that the public are likely to be misled, and an injunction will be granted to restrain the defendant from such unlawful use of the word in the future, whether the plaintiff has suffered pecuniary injury before the filing of his bill or not.

BILL IN EQUITY, filed June 12, 1903, to restrain the defendants from using the word " Rex" or the word " Rexall" alone or with other words in connection with the manufacture and sale of dyspepsia tablets.

The case was referred to Arthur D. Hill, Esquire, as master. The master found for the plaintiffs, and the case came on to be heard before *Braley,* J. upon the master's report and the defendants' exceptions thereto. The defendants' exceptions other than the fourth having been waived, the justice reserved the case upon the master's report and the fourth exception thereto for determination by the full court.

The fourth exception was as follows: "For that the master found that the word 'Rexall', as applied to a remedy for dyspesia, is so similar to the word 'Rex', as used by the plaintiffs in connection with the sale of their medicine, that persons not familiar with the exact appearance of the plaintiffs' remedy and the appearance of the boxes and labels with which it is sold, and using such care and observation as the public generally are capable of using and may be expected to use in such a matter, are likely to mistake one for the other."

*R. F. Herrick,* (*H. L. Burnham* with him,) for the defendants.

*A. P. Hardy,* for the plaintiffs.

BRALEY, J.    When the plaintiff, Ellen M. Regis, first compounded her preparation in the form of pills she marked on the boxes in which they were sold the word " Rex ", from which her family surname was derived. She not only adopted and attached it as the distinctive feature indicative of the origin, identity and proprietorship of her cure for dyspepsia, but filed it as a trade mark under St. 1895, c. 462, § 1. No evidence appears that at any time she has abandoned or ceased to use it, but the contrary is true. She has formed a partnership with her son, and from small sales in its original form and within a circumscribed territory other and more attractive combinations have been made, and the business has slowly increased in value and extended into larger fields. This is enough in the present case to establish an exclusive right of property in the plaintiffs to the device or name used in their business. *Burt* v. *Tucker,* 178 Mass. 493. *Lawrence Manuf. Co.* v. *Tennessee Manuf. Co.* 138 U. S. 537.

It may be conceded that words which are merely descriptive

of the style and quality of an article cannot be appropriated and used for this purpose by the manufacturer in the description of his wares to the exclusion of a similar use by others; but any words or devices that have for their principal object to make plain the identity of the owner with the specific goods prepared and sold by him are not so classed, but may constitute a valid trade mark. *Lawrence Manuf. Co.* v. *Lowell Hosiery Mills*, 129 Mass. 325, 327. *Frank* v. *Sleeper*, 150 Mass. 583. *Samuels* v. *Spitzer*, 177 Mass. 226. *Lawrence Manuf. Co.* v. *Tennessee Manuf. Co.*, *ubi supra*. *Columbia Mill Co.* v. *Alcorn*, 150 U. S. 460.

Although the subsequent origin of the mark or name used by the defendants on their cure for dyspepsia is not stated, it is found that it was not originally intended as an imitation of that of the plaintiffs, but may be considered as a fanciful term invented by the United Drug Company, and which was used to denote a particular proprietary medical compound put up and sold by it or its licensees.

But if no intention to wrongfully injure the plaintiffs is manifested in the origin of " Rexall ", this does not constitute a defence where priority of ownership and continuous use is shown of the device or mark of which it is found to be an imitation, and buyers are likely from the resemblance to be misled and purchase the defendants' cure when they desire to buy and believe they are getting the remedy made by the plaintiffs. *Gilman* v. *Hunnewell*, 122 Mass. 139. *Burt* v. *Tucker*, *ubi supra*. *North Cheshire & Manchester Brewery Co.* v. *Manchester Brewery Co.* [1899] A. C. 83.

A mere comparison of the different words, devices or designs which may be used for the purpose of a trade mark is not enough to make out the main fact to be proved, but the plaintiffs must go further and establish the essential proposition on which a case like this depends; that taking all the circumstances, the form of manufacture, names, labels, shape of boxes or receptacles in which they are sold, there exists a reasonable probability that purchasers using ordinary care will be deceived by the similarity of names and led into mistaking one medicine for the other. *McLean* v. *Fleming*, 96 U. S. 245.

Among the various findings and rulings made by the master,

the only one now material is that in which he decides this principal issue of fact, and to which the single exception argued by the defendants was taken.

An examination of the report shows that the remedies are compounded in the form of two kinds of tablets, to be taken in connection with each other, and in this respect there was a likeness between them, though the boxes used for each in form and the labels attached are so dissimilar that persons of ordinary intelligence, if no further resemblance was found, could easily distinguish them, yet upon the whole, in connection with the similarity of names, the similitude becomes such that purchasers not familiar with the exact appearance of each, and the boxes and labels with which they are sold, and exercising the care and observation of the average buyer, are likely to mistake the defendants' preparation for that of the plaintiffs.

This finding is well supported by the evidence and subsidiary findings stated in the report, and under our rule where all the evidence is not reported, therefore becomes final and is not to be disturbed. *East Tennessee Land Co.* v. *Leeson*, 183 Mass. 37, 38.

But the master further determined that within a common territorial area, the United Drug Company, with the knowledge and consent of the defendants who are represented in the advertisements as sole agents for its sale, has advertised, while the defendants to a very limited extent have sold, this medicine as a specific for the same disease, but it did not affirmatively appear that such competition in trade at the time the bill was filed had led to any actual injury to the business of the plaintiffs, and for this reason he declined to assess damages. Presumably their prompt action, which did not allow sufficient time to pass before suit to ascertain the effect on their trade, had, to a very large degree, forestalled results which they feared might follow from, and probably would have been caused by, the unauthorized acts of the defendants.

If at common law an action for damages caused to a manufacturer whose goods were put upon the market under a trade mark and had acquired a distinctive value and reputation, could be maintained against another trader who fraudulently copies and places on the goods made by him a similar mark or label,

in equity relief can be granted not only as to damages already suffered, but an injunction can be awarded restraining such unlawful use in the future.    *Thomson* v. *Winchester*, 19 Pick. 214. *Marsh* v. *Billings*, 7 Cush. 322, 332.    *Lawrence Manuf. Co.* v. *Lowell Hosiery Mills, ubi supra.    Holbrook* v. *Nesbitt*, 163 Mass. 120.

If the choice of the trade device used by the defendants was innocent and not copied from the name used by the plaintiffs, yet it appears, and the master has found, that after notice given to them that their continued use of it was wrongful, because of the fact that it was an imitation of the plaintiffs' trade mark, they still allowed their names to appear in the same form of advertisement, and continued to sell their preparation without any change of name, shape or label.    Such conduct of itself affords strong presumptive evidence of fraud.    *Orr* v. *Johnston*, 13 Ch. D. 434.    And their acts from that time at least must be considered as a direct and intentional infringement.    *New England Awl & Needle Co.* v. *Marlborough Awl & Needle Co.* 168 Mass. 154.    *American Waltham Watch Co.* v. *United States Watch Co.* 173 Mass. 85.    *Flagg Manuf. Co.* v. *Holway*, 178 Mass. 83. *Viano* v. *Baccigalupo*, 183 Mass. 160.    *Upmann* v. *Forester*, 24 Ch. D. 231.    *Manhattan Medicine Co.* v. *Wood*, 108 U. S. 218.

Although the master has decided that the plaintiffs have not yet suffered any monetary loss, equity interferes when title and successful imitation have been established to prevent the impairment or destruction of the right itself, notwithstanding it may also be found that the reputation and use of the plaintiffs' remedy may be confined to a relatively small section of the State when compared with the field occupied by the defendants, and probably is less widely known and sold, and much inferior to their specific in popularity.    Such a disparity in volume of trade, or in reputation, if held to be decisive as a limitation of the extent to which relief should be granted, affords no opportunity ordinarily for the organization and development of a business, though founded on a valid trade mark, where from a small and feeble beginning, if not subjected to unlawful interference by rivals, it may become a large and profitable enterprise, which the owner has a right to foster and establish.    For the injury

suffered in such a case is the same in kind, though it may differ in degree. *Shaver* v. *Shaver*, 54 Iowa, 208, 210, 212.

While the public are deceived and buy the spurious production in the belief that the imitation is the original article, yet the jurisdiction to award an injunction may well rest on the ground, that where a substantial business has been built up, the output of which has become known to buyers under a designated device or name, such designation, when lawfully established, whether treated technically as a trade mark or trade name, is property in the same sense as the instrumentalities which the owner uses in making the specific thing that he vends in the market in this form. So that the proprietor of such a trade product, if another without authority uses similar devices intending to represent by them that the goods are identical, is entitled to protection from this wrongful and fraudulent appropriation of his property. *Weener* v. *Brayton*, 152 Mass. 101. *Bradley* v. *Norton*, 33 Conn. 157. *McLean* v. *Fleming, ubi supra. Hall* v. *Barrows*, 32 L. J. Ch. (N. S.) 548, 551. *Millington* v. *Fox*, 3 Myl. & Cr. 338.

As the plaintiffs have made out a case, they are entitled to an injunction to prevent and restrain further interference with the use and enjoyment of their property, and the defendants' exception to the master's report must be overruled and the report confirmed.

*Decree for the plaintiffs accordingly.*