## CORBETT BROTHERS COMPANY

*v.*

## REINHARDT-MEDING COMPANY.

[Decided May 7th. 1910.]

1. Where manufacturers of ribbons adopted a trade-mark consisting of a monogram of three letters, the form of which was necessarily liable to a certain degree of imitation in general effect, if the general form or idea of the monograms was adopted. its protection as a trade-mark must, to some extent, depend on the liability of a purchaser to be deceived on close inspection.

2. Numbers used by manufacturers of ribbon to designate the width of the ribbon were the common property of the trade and not the subject of a trade-mark, but a series of arbitrary numbers used to indicate the precise color or shade of the ribbons and used to indicate the origin of the goods was a proper subject of protection as trade-marks against unlawful competition.

3. Where a bill of sale of the assets of a partnership included all contracts, obligations, and everything in any way pertaining to the business of the partnership, it was effective to convey to the purchaser the partnership's trade-marks.

Heard on bill, answer, replication and proofs.

*Mr. Edward Q. Keasbey,* for the complainant.

*Mr. William B. Gourley,* for the defendant.

EMERY, V. C.

The bill in this case is filed by the complainant, a company engaged in the manufacture and sale of silk ribbons, against the defendant, a company engaged in similar business, to restrain the alleged infringement of complainant's trade-marks, and also to restrain alleged unfair competition.

Complainant company is the successor and assignee of a partnership formerly composed of four persons, one of whom was C. A. Reinhardt, one of the officers and organizers of the defend-

ant company, and complainant's claim to relief is based partly
on the fact that Reinhardt's assignment of his interest in the
property and everything pertaining to the business of the firm
included the trade-marks in question. Both companies manu-
facture a high grade of silk ribbons and sell only to jobbers or
retailers, and the general style of putting up the· ribbons for sale
in the market, and designating the manufacturer, and also the
kind, quality and color of the ribbons, is one adopted by all manu-
facturers, and is substantially as follows:

The ribbons are rolled or wound upon cylindrical blocks about
two inches in diameter, of the various widths or thickness re-
quired, and when so wound are called "bolts." Both sides of the
circular block on which the ribbons are wound are covered with
paper, and upon these are shown within a large circle the marks
or signs indicating the manufacturer, the general style or char-
acter of ribbon, the pattern of the ribbon, the width, and also
the color. The style of ribbon is usually indicated by descriptive
words, such as "belting," "satin taffeta," &c., and the pattern or
weave of ribbon, by the word "pon," meaning pattern, followed
by a number—each manufacturer having his own numbers for
his patterns. The manufacturer of the goods is directly indicated
by a trade-mark proper in the centre of the label, on the same
side with the above marks. In the case of both parties to this
suit, it is a small monogram in the centre of the label, and in
each case composed substantially of three principal letters super-
imposed; in complainant's monogram the letters C. B. C.; in the
defendant's, R. M. C. In both of the monograms the letter "C"
has a striking elongated shape; the letter "B" of one and "R"
of the other occupy similar positions with reference to the elon-
gated "C." The letter "M" worked into the centre of defendant's
monogram is unlike anything in complainant's monogram, and is
sufficient to distinguish it, on a careful inspection, if such test is
important in the case. The question of similarity is one to be
decided in this case mainly by inspection, for both parties sell
to jobbers or retailers, and not to the public, and there is no evi-
dence that the jobbers or retailers have been, or are likely to be,
deceived into purchasing defendant's goods for complainant's by
any similarity in the monograms. There is undoubtedly a general

similarity in the monograms, and some difficulty, perhaps, for the average person in deciding, without a rather careful inspection, which of the two monograms is on the label, but this is the result, I think, of the adoption by both parties of the small monogram of three letters, a form which either party was at liberty to adopt. It is a form of trade-mark which, I think, was necessarily liable to a certain degree of imitation in general effect, if the general form or idea of the monograms was adopted, and its protection as a trade-mark therefore must, in a case of this kind, to some extent, depend upon the liability of a purchaser to be deceived on close inspection. In reference to the use of the monogram, I conclude upon the whole evidence that a case of violating trade-marks or of unfair competition has not been made out. In reference to another part of the label, however, the complainant has, in my judgment, made out a case for relief. This relates to the use by the defendant on its labels of the same color numbers adopted by complainant to indicate the colors of the ribbons. These numbers are on the reverse side of the label, on which are also the numbers indicating the widths of the ribbon. The numbers designating the width are descriptive and are common property in the trade, but each manufacturer has usually his own set or series of numbers to indicate the precise color of the ribbons. These numbers are arbitrarily selected by each manufacturer, and they usually adopt a series of successive numbers for the different shades of a color, *e. g.,* in complainant's case, Nos. 1, 2 and 3, successive shades of white; 10 to 13, shades of pink; 15, &c., shades of blue; 45, &c., shades of indigo.

It appears by the evidence on both sides that in the manufacture and sale of ribbons, the continuance and reproduction of uniform shades is very important and is secured by the use of great skill and care. The standard of color for the ribbon (designated by the arbitrary number) is obtained by preserving a skein of the silk dyed to the color, which skein is carefully wrapped in paper, protected from the light, and is marked by the arbitrary number. The subsequent dyeings, when the same color is ordered or desired, are carefully compared in the skein with the standard color skein and by one or more experts in colors, and approved or redyed, as the case may be. Many of the colors to

10 CASES IN CHANCERY.

Corbett Bros. Co. *v.* Reinhardt-Meding Co. 77 *Eq.*

which these arbitrary numbers are fixed are standard colors, such as pinks, blues, greens, and so forth, and the successive numbers usually indicate different shades. These color numbers adopted by each manufacturer are made known to the retailers and jobbers by what are called color cards, giving samples of the different colors, with the color numbers on them. In ordering ribbons from the manufacturer, the color desired is usually, if not always, indicated on the order itself by the manufacturer's color number.

These arbitrary color numbers adopted for this purpose and so used on the labels of each manufacturer put on the bolts of ribbons, are intended to indicate, and do indicate, I think, the origin of the goods sold and the manufacturer, and come strictly within the protection of trade-mark rights. Numbers arbitrarily selected when used for this purpose are valid trade-marks. *American, &c., Leather Co.* v. *Anthony (R. I., 1886), 5 Atl. Rep. 626; Shaw Stocking Co.* v. *Mack (Judge Cox, 1883), 21 Blatchf. 1.* In *Ransome* v. *Graham, 51 L. J. Ch. (N. S.) 897,* a series of combination of letters applied to indicate the origin of goods, was protected as a trade-mark, although they also indicated quality or patterns. In *Humphreys Specific, &c., Co.* v. *Wenz, 14 Fed. Rep. 250 (Chief-Justice Nixon),* a series of numbers used in connection with the name "Humphreys Specifics," each number designating a particular kind of medicine, was protected as a trade-mark. The use of such portion of a defendant's label or mark on its goods as is part of a complainant's trademark may be enjoined. *Eureka Fire Hose Co.* v. *Eureka Rubber Manufacturing Co., 69 N. J. Eq. (3 Robb.) 159; affirmed on appeal, 71 Atl. Rep. 1134; 71 N. J. Eq. (1 Buch.) 300.*

The color numbers now used by complainant, as to which it applies for protection, were originally adopted by a partnership, Corbett, Reinhardt & Company, composed of the Corbett Brothers, Edgar M. and Robert S., Frank A. Reinhardt and one Horandt, and were arbitrarily selected, and for the purpose of having color numbers distinct from those of other manufacturers. On March 2d, 1907, Reinhardt, by bill of sale and for the sum of $40,000, conveyed to the two Corbett Brothers all his right, title and interest as partner or otherwise, in the goods and chattels, rights, effects and property of any kind belonging to the firm,

and on March 9th, 1907, the three remaining partners, by bill of sale, conveyed to the complainant company the partnership property, including, among other things, "all contracts, obligations and everything in any way pertaining to the business of the partnership."

The transfers were effective to convey to the complainant the trade-marks of the partnership, and if the color numbers are part of the trade-marks, the use of them by defendant company is an infringement of complainant's property rights derived under the two bills of sale.

The former partner Reinhardt, subsequent to these transfers, organized the defendant company and used in the business of the new company and for the same purpose, the color numbers originally adopted by the firm Corbett, Reinhardt & Company, so far as the defendant company took up the manufacture of ribbons of the same color, and the evidence shows that the adoption of the same series of color numbers was deliberate and intentional and made under the belief or claim that complainant had no right to the exclusive use of the color numbers to indicate its goods, and that the use of the color numbers did not constitute any trade-mark or property right.

In my judgment, the color numbers being used to indicate the origin of the goods, are entitled to the protection of trade-marks, and I dispose of the case on this ground, without considering the further question as to whether the use of the color numbers, either alone or in connection with the monogram on the label, was not, under the evidence, unfair competition against which complainant is entitled to relief. I conclude that complainant is entitled to an injunction restraining the use of the series of color numbers adopted by complainant to mark the same or similar colors of ribbons manufactured by defendant. The colors indicating "white," Nos. 1, &c., are, however, not to be included, as it appears that many manufacturers use this same series.

On settlement of decree application may be made to specify the color numbers as to which the injunction is to go. The complainant asks a decree for account, and application therefor may also be made at the settlement of the decree.