## GOLDSMITH SILVER CO. v. SAVAGE.

(Circuit Court of Appeals, First Circuit. December 10, 1915. Rehearing
Denied March 1, 1916.)

### No. 1120.

1. APPEAL AND ERROR ⬤⟾697(5)—RECORD—MATTERS REVIEWABLE—FINDINGS
   OF FACT BY MASTER.

   A master's finding of facts upon the evidence taken by him cannot be
   impeached, in the absence from the record of the certificate, or other com-
   petent proof, either that the evidence presented is the entire evidence tak-
   en by him, or that it contains all the evidence which was before him rela-
   tive to the specific finding or findings challenged.

   [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 2925;
   Dec. Dig. ⬤⟾697(5).]

2. APPEAL AND ERROR ⬤⟾931—REVIEW—REPORT OF MASTER—PRESUMPTION AS
   TO EVIDENCE RETURNED.

   While it will be presumed that the report of a master, made under an
   order directing him to report the evidence, contains all the evidence tak-
   en before him, there is no such presumption where he was directed only
   to report his findings.

   [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3728,
   3762-3771; Dec. Dig. ⬤⟾931.]

3. TRADE-MARKS AND TRADE-NAMES ⬤⟾65, 70—INFRINGEMENT—UNFAIR COM-
   PETITION.

   There is one element common to the right to recover for infringement
   of trade-mark and for unfair competition, and that is that the dress of
   the alleged infringing or competing article is so similar to the one com-
   peted with that it is probable that the purchasing public, while in the
   exercise of reasonable care, will be deceived.

   [Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent.
   Dig. §§ 64, 81; Dec. Dig. ⬤⟾65, 70.]

4. TRADE-MARKS AND TRADE-NAMES ⬤⟾55, 69—INFRINGEMENT—UNFAIR COM-
   PETITION.

   In case of infringement of trade-mark, the intention of the infringer is
   immaterial; but, to establish unfair competition, complainant must prove
   a fraudulent intent, or show facts and circumstances from which it may
   reasonably be inferred.

   [Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent.
   Dig. §§ 63, 80; Dec. Dig. ⬤⟾55, 69.]

5. EQUITY ⬤⟾409—REFERENCE BY CONSENT—MASTER'S FINDINGS—CONCLU-
   SIVENESS.

   Under a reference of an entire case to a master by consent of parties,
   to report his findings of fact and conclusions of law, without the reserva-
   tion of a right of review, his findings of fact are conclusive, if there is
   any competent evidence to support them.

   [Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 904, 920-923; Dec.
   Dig. ⬤⟾409.]

   Putnam, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the District
of Maine; Clarence Hale, Judge.

Suit in equity by the Goldsmith Silver Company against Llewellyn
W. Savage. Decree for defendant (211 Fed. 751), and complainant
appeals. Affirmed.

See, also, 206 Fed. 1001.

Maurice E. Rosen, of Portland, Me., for appellant.
Phillips B. Gardner, of Bangor, Me., for appellee.

Before PUTNAM, DODGE, and BINGHAM, Circuit Judges.

BINGHAM, Circuit Judge. This is a proceeding in equity, brought by the complainant, appellant, against the defendant, in which it alleges and claims (1) that it is the owner of a trade-mark in the numerals "108," as adopted and used by it with reference to a certain cigar, which it manufactures and puts upon the market, and that the defendant has infringed its right by employing the numerals "208" on a cigar which he manufactures and puts upon the market; and (2) if it is not entitled to an exclusive right in the numerals "108" as a trademark, that by the adoption of them and their use through a series of years in connection with the sale of a certain cigar it has established a trade therein, and that the defendant, by putting upon the market his cigar numbered "208," is guilty of unfair competition.

By agreement of the parties the case was sent to a special master under an order of the court, with directions "to take the testimony and report the findings of fact and conclusions of law to the court, with all convenient speed, subject to exceptions according to the usual course of chancery practice." Having heard the parties, the master made his report, in which he found in substance (1) that the complainant's predecessors in title adopted the numerals "108" to denote the origin and source of manufacture of a certain cigar that it manufactured, which mark the complainant and its predecessors have continued to use in connection with the manufacture and sale of said cigar for more than 20 years, but ruled that the complainant had no exclusive right to the use of such numerals, in that they would not constitute a valid trade-mark when not associated with some name or device to characterize and distinguish them. Having thus disposed of this question, he proceeded to consider whether the business, which the complainant had built up by the use of the numerals "108" in connection with its cigar, had been unlawfully interfered with by the defendant.

With reference to this subject, he states that one question is whether the natural and probable tendency and effect of the conduct of the defendant in his sale of the cigar marked "208" was such as to deceive the public, so as to pass off his goods for those of the complainant. He then finds that the box containing the cigars manufactured and sold by the defendant, when compared with the box containing the cigars manufactured and sold by the complainant, presented no such resemblance as would cause deception on account of similarity; that the shape, size, and general appearance of the boxes were very dissimilar, and that the labels upon them were entirely different; that the numerals occupied different places on the respective boxes, and were so different in size as to present no real similarity to the eye; that, while the size of the cigars was practically the same, there were a million other makes of like size; and that the complainant's cigar was branded "108" while the defendant's was not. He summarizes his finding as follows:

"From a comparison, therefore, of the cigars and boxes, including labels, general appearance, and make-up, I find that there would be little or no possibility of a dealer thinking that they were the cigars manufactured and sold by complainant."

As to the contention that the defendant, by manufacturing his cigars and selling them under the numerals "208," put into the hands of retail dealers the means of deceiving the ultimate consumer by substituting cigars of his brand for those of the complainant's brand, he ruled that:

"To warrant the issuing of an injunction, either actual or probable deception and confusion must be shown, and that mere possibility of deception was not enough."

After setting forth and analyzing the evidence bearing on this question, and showing that the complainant's and defendant's cigars are of the same size, shape, and color, and that there are. numerous other cigars on the market of like size, shape, and color, he finds that the parties sent by the complainant to purchase cigars from retail dealers, and who testified in the case, were not deceived, and that the boxes were so marked and the marks on the boxes containing defendant's cigars were so open to observation that there was no likelihood of purchasers being deceived; that there is no uniform rule followed by retail dealers in the display of the boxes, but that generally their covers are torn off or bent back and put under the boxes, so that only the boxes themselves are seen in the cigar case; that if an unscrupulous retail dealer, who did not have the "108" cigar, wished to palm off on the purchaser a different one, he could do this as well by substituting any other cigar of the same shape and size, of which there were many on the market; and that to take cigars from a box marked "208" would assist him very little in accomplishing his purpose.

He then considers the evidence bearing upon the question of the purpose and intention of the defendant in adopting the universal Londres shape and size of cigar for his cigar, with the numerals "208" upon the box, and concludes, inasmuch as the boxes were dissimilar, and the size, shape, and color of the cigars were the same as many others on the market, that in the adoption of the numerals "208" the defendant did not intend to encroach upon the complainant's trade by deceiving the public, and that this conclusion was not overcome by the fact that the defendant had at one time handled the complainant's cigar as a jobber in practically the same territory in which he later sold the cigars marked "208."

The report having been filed, the complainant excepted to the following findings of fact and conclusions of law of the master:

"First. That the master finds as a matter of law that the numerals '108' as used by your petitioner are not the subject of a trade-mark.

"Second. That the master finds that the petitioner is not entitled to an injunction on account of an infringement of the defendant on the alleged trade-mark.

"Third. That the master finds that the petitioner has not established his case of unfair competition on the part of the defendant as will entitle him to an injunction as prayed for.

"Fourth. That the master finds that the petitioner is not entitled to an accounting for damages."

There was a general exception to the report as against the law, the evidence, and the weight of the evidence.

In the District Court the findings and rulings of the master were sustained, and a decree was entered affirming the same. From this decree an appeal was taken to this court, and the errors assigned were that the District Court erred: (1) "In finding that the name '208,' as used by the defendant in connection with the defendant's sale of his cigars, was not an infringement upon the complainant's trade-mark rights to use the name '108' as used by it"; and (2) "in finding that the use by the defendant of the name '208' in connection with the sale of his cigars was not unfairly competing against the complainant in the complainant's use of the name '108' in connection with its sale of cigars." The third, fourth, fifth, sixth, and eighth assignments were mere subdivisions of assignments 1 and 2. The seventh was that the court erred "in not finding from all the evidence that the conduct of the defendant in placing upon the market his '208' cigars was for the fraudulent purpose of unfairly competing with the complainant." The ninth, tenth, and eleventh assignments were general.

[1, 2] The report of the master was filed February 3, 1914, and the opinion of the District Court dismissing the bill was filed March 16, 1914. On March 15, 1915, the depositions of certain witnesses, whose testimony purports to have been taken in the case, were filed in the District Court. The record contains no stipulation that these depositions embrace all the evidence presented before the master, and the order of the court sending the case to the master contained no direction to him to report the evidence. Under these circumstances the evidence contained in the depositions cannot properly be considered by us for the purpose of determining whether the findings of fact by the master are correct or otherwise. "The true rule upon this subject is that the master's finding of facts upon the evidence taken by him cannot be impeached, in the absence from the record of the certificate, or other competent proof, either that the evidence presented is the entire evidence taken by him, or that it contains all the evidence which was before him relative to the specific finding or findings challenged." While it would be presumed, in the absence of countervailing proof, in case the order to the master had contained a direction to report the evidence, and on filing his report he had accompanied it therewith, that he had faithfully discharged his duty and returned all the evidence, no such presumption can be indulged in this case, for the order to the master contained no such direction, and the record does not disclose that the evidence was returned by the master. Guarantee Gold Bond Loan & Savings Co. v. Edwards et al., 164 Fed. 809, 811, 90 C. C. A. 585, and cases there cited.

The complainant has argued his case as though the finding and ruling of the master—that the numerals "108," as used by the complainant, were not a valid trade-mark—had been assigned by him as error. The record discloses that an exception of this kind was taken to the master's report, but that it was not assigned as error on this appeal. The question, therefore, is not before us, and we are not required to pass upon it. Whether naked numerals may constitute a valid trade-mark

has never been determined. The cases, however, are not without expressions of opinion upon the subject, some viewing the matter from one standpoint and some from another, and text-writers have entertained equally divergent views.

[3, 4] But if we assume that the complainant has a valid trademark in the naked numerals "108," it does not follow that it is entitled to the relief asked, unless the finding that the defendant is not guilty of infringement cannot be sustained. Whether the complainant's action proceeds upon the ground of infringement of a trade-mark or upon the ground of unfair competition, there is one element common to both rights which it is essential for it to establish, and that is that the dress of the alleged infringing or competing article is so similar to the one competed with that it is probable the purchasing public, while in the exercise of reasonable care, will be deceived and led to purchase the competing article for that of the complainant with consequent injury to his trade. In the case of infringement of a technical trade-mark the intention of the infringer is immaterial, as the essence of the wrong lies in the injury to a property right; while in the case of unfair competition the intention is material, to establish fraud on the part of the defendant in the use of the imitative device to beguile the public into buying his goods as those of his rival. In the former case fraud, if material, is presumed; while in the latter the complainant must prove a fraudulent intent, or show facts and circumstances from which it may reasonably be inferred. In either case, however, it must be shown that the dress or device employed by the defendant is such that it has deceived, or is calculated to deceive, ordinary purchasers buying with usual care, and that they have purchased or will probably purchase the goods of the defendant under the mistaken belief that they are those of the plaintiff, to the serious damage of the latter. McLean v. Fleming, 96 U. S. 245, 24 L. Ed. 828; Regis v. Jaynes, 185 Mass. 458, 460, 70 N. E. 480; Paul on Trade-Marks, §§ 196, 280.

[5] As heretofore pointed out, the master has found in favor of the defendant on the last proposition, and the court below has affirmed the finding. Findings so made are not to be lightly disregarded, and this is especially true where, as here, it appears that the case was sent to the master under an agreement of the parties that he should hear the evidence and report his findings of fact and conclusions of law thereon. In Kimberly v. Arms, 129 U. S. 512, 9 Sup. Ct. 355, 32 L. Ed. 764, the order sending the case to the master read as follows:

"By consent and request of all the parties herein, it is ordered by the court that Hon. R. D. H. be and is hereby appointed a special master herein to hear the evidence and decide all the issues between the parties and make his report to this court, separately stating his findings of law and fact, together with all the evidence introduced before him, which evidence shall thereby become part of the report, which report shall be subject to like exceptions as other reports of masters."

This order differed in no respect from the one under consideration, except that it directed the master to report the evidence introduced before him and make it a part of his report. In determining the

effect to be given to findings of a master under such a reference, Mr. Justice Field said:

"A reference by consent of parties of an entire case, for the determination of all its issues, though not strictly a submission of the controversy to arbitration—a proceeding which is governed by special rules—is a submission of the controversy to a tribunal of the parties' own selection, to be governed in its conduct by the ordinary rules applicable to the administration of justice in tribunals established by law. Its findings, like those of an independent tribunal, are to be taken as presumptively correct, subject, indeed, to be reviewed under the reservation contained in the consent and order of the court, when there has been manifest error in the consideration given to the evidence, or in the application of the law, but not otherwise. * * * To disregard the findings and treat the report as a mere presentation of the testimony is to defeat, as we conceive, the purpose of the reference and disregard the express stipulation of the parties. We are therefore constrained to hold that the learned court below failed to give to the findings of the master the weight to which they were entitled, and that they should have been treated as so far correct and binding as not to be disturbed, unless clearly in conflict with the weight of the evidence upon which they were made."

In Davis v. Schwartz, 155 U. S. 631, 15 Sup. Ct. 237, 39 L. Ed. 289, the order of reference to the master, as in Kimberly v. Arms, was by consent of the parties to hear the case and report his findings and conclusions of law, but it did not contain a reservation of the right to review his findings, and it was there held that, under such an order, the findings of fact by the master were conclusive, if there was any evidence upon which they could be made. In the opinion of Mr. Justice Brown, it was said:

"As the case was referred by the court to a master to report, not the evidence merely, but the facts of the case, and his conclusions of law thereon, we think that his finding, so far as it involves questions of fact, is attended by a presumption of correctness similar to that in the case of a finding by a referee, the special verdict of a jury, the findings of a Circuit Court in a case tried by the court under Rev. Stat. § 649, or in an admiralty cause appealed to this court. In neither of these cases is the finding absolutely conclusive, as if there be no testimony tending to support it; but so far as it depends upon conflicting testimony, or upon the credibility of witnesses, or so far as there is any testimony consistent with the finding, it must be treated as unassailable."

And again he says:

"As there is nothing to show that the findings of fact were unsupported by the evidence, we think they must be treated as conclusive."

The views of the Supreme Court, as expressed in the above cases, have been recognized and followed in the various circuits. See Connor v. United States, 214 Fed. 522, 131 C. C. A. 68; Hattiesburg Lumber Co. v. Herrick, 212 Fed. 834, 842, 843, 129 C. C. A. 288; Guarantee Gold Bond Loan & Savings Co. v. Edwards, 164 Fed. 809, 811, 90 C. C. A. 585.

We have carefully examined the report of the master with reference to his finding of fact upon the question material to both grounds of complaint and the exhibits particularly relating thereto, and are of

the opinion that the proofs show that the master was right, rather than that he was clearly wrong.

The decree of the District Court is affirmed, with costs to the appellee.

PUTNAM, Circuit Judge (dissenting). In the middle circuits the practice had been formerly common for the court, sometimes on its own motion, to send a case to a master to try at the outset all the issues, without proceeding to dispose of them in any part as the result of its own investigation and judgment. Clearly this was not a lawful practice under any equity rules, and this was so announced in Kimberly v. Arms, 129 U. S. 512, 9 Sup. Ct. 355, 32 L. Ed. 764. The announcement in Kimberly v. Arms as to the effect of such a reference when agreed to by the parties was mainly incidental. While the case has since been followed without question, it did not attract the notice of either court or counsel in the present suit. Clearly that case should not be applied beyond what the law really requires.

The appeal before us presents two distinct questions: One is whether, independently of a technical trade-mark, the respondents have been guilty of unfair competition. This is properly a mixed question of both law and fact, but it contains so much fact that the disposition of the facts, if accepted as found by the master and the District Court, disposes of it. On this part of the case the District Court and the master agree; therefore, accepting the law as given as early as Crawford v. Neal, 144 U. S. 585, 596, 12 Sup. Ct. 759, 36 L. Ed. 552, and perhaps earlier, and as continuing down to the last volumes of the Supreme Court Reports, this concurrent conclusion should control our decision, as it is very evident that there is much to be said about this on both sides.

Upon the other branch of the case, which relates strictly to the trade-mark "108," the complainant assigned as error as follows:

"That the United States District Court for the District of Maine erred in finding that the name '208' as used by the defendant in connection with the defendant's sale of his cigars was not an infringement upon the complainant's trade-mark rights to use the name '108' as used by it."

This might be criticized as perhaps too general, but it is sufficiently comprehensive to cover all questions involved, and to give full notice that the complainant still rests on its trade-mark. The complainant also proceeded in good faith to argue this proposition fully, and there is no technical rule which requires us to throw him out.

There has never been any authoritative decision sustaining the claim of the respondent that a number like "108" may not be properly held to be a trade-mark. In this particular case it seems to have been taken from the street number of the building where the complainant's factory or place of trade was. In McLean v. Fleming, 96 U. S. 245, 24 L. Ed. 828, there is a full and complete discussion by Mr. Justice Clifford of the law of trade-marks; and he makes it sweeping enough to cover in a mere number. As we have said, there has been no authoritative decision throwing out numbers as trade-marks, though there has been considerable discussion on the

topic. As applied to the present case, the numerals answer all the demands for a proper trade-mark, indicating · nothing except such elements as are proper to establish trade mark rights; and, in the lack of any authoritative hostile decision, we might accept the position of the complainant in view of the general observations of Mr. Justice Clifford (96 U. S. at pages 250, 254, 24 L. Ed. 828), especially about "symbol, figure, letter, form, or device." These observations are sufficient to show the position of the federal courts.

In the state courts we have not only the cases cited therein, but we have also, in Coddington's Digest of Trade-Marks (1878) at page 260 and sequence, a discussion of the use of numerals entirely favorable to our view; also, from pages 361 to 374, there is a long schedule of various kinds of inscriptions which have been sustained as trademarks, which illustrate the observations of Mr. Justice Clifford, and confirm them to such an extent as to cover this case. Gillott v. Esterbrook, 48 N. Y. 374, 8 Am. Rep. 553, and sequence, sustains our view of the law fully, and leaves it without doubt, so far as the New York courts are concerned. That case relates to the figures "303" on writing pens. The figures were connected in the trade-mark with the words "extra fine" and the name of Joseph Gillott, in whose behalf the adjudication was made. The infringement was by Esterbrook & Co., and did not use the name of "Gillott," but used their own name, so that by the very substance of the matter it was impossible to attribute the decision to anything except the number, and it appears all through the case that that was the view of the court. This is all the more evident on looking at the report of the case in the Supreme Court, 47 Barb. (N. Y.) 455. It will appear from the decisions in these two courts that this case was very throughly considered by the courts, and was maintained on each side by very distinguished and painstaking counsel, including John Sherwood and F. R. Sherman in the Court of Appeals. The frame of the injunction appears plainly in 47 Barbour, and there can be no question on reading the whole case that the courts aimed at those figures as the essential part of the trade-mark; the name of the manufacturers having been dropped out, and the name of Esterbrook & Co. substituted. It is observed by Judge Ingraham in 47 Barb. (N. Y.) 481 that it was "303" that the complainants claimed a right to as a trade-mark, and that the injunction would be perpetual as to the use of that number.

We also remark, as to the difference between "108" and "208," that Mr. Justice Clifford (96 U. S. at page 255, 24 L. Ed. 828), stated that:

"Where the similarity is sufficient to convey a false impression to the public mind, and is of a character to mislead and deceive the ordinary purchaser, * * * it is sufficient to give the injured party a right to redress."

Also, in the Gillott Case, the fact that the trade-mark used by the respondents omitted Gillott's name, and used another name, did not affect the result. With reference to an established trade-mark, the rule of law in this respect is more liberal than with reference to matters of unfair dealing. In the same line is the observation in Taylor v. Carpenter, 2 Sandf. Ch. (N. Y.) 603, and the whole mass of author-

ities as to trade-marks proper. It is difficult to understand why this "208" should have been used, except for the purpose of misleading.

Kimberly v. Arms does not interfere with these propositions, because the questions involved in this trade-mark are substantial questions of law, and Kimberly v. Arms, which has been many times explained and restricted in its application, certainly does not affect a question of that character. No ruling of the Supreme Court has ever held that any finding of a master in chancery on a merely legal proposition is conclusive.

It is true that the respondent has not mathematically taken the complainant's trade-mark, but within the practical rules it made use of it, and no suggestion has been made anywhere that he had any other purpose which induced him to use the figures "208," and no other purpose is conceivable.

We will add that Gillott v. Esterbrook, 48 N. Y. 374, 8 Am. Rep. 553, has never been reversed, or even authoritatively questioned, so far as the principles which we are discussing are concerned. It has been approved. This was done, as well as elsewhere, by the very marked opinion by Judges Sedgwick and Van Vorst, in 1879, in 45 N. Y. Super. Ct. 258, in the well-known Rubber Comb Case, where the peculiar reason for accepting numerals as trade-marks when used as in the case at bar was strongly stated. This case is found in Price & Stuart, at page 191, where it was pointed out that the numbers there involved were selected arbitrarily, and of themselves expressed no size or quality. This is the very pith of one fundamental requirement ordinarily demanded in a trade-mark. In Shaw Stocking Co. v. Mack (C. C.) 12 Fed. 707, decided in June, 1882, a case always recognized as a leading case, Judge Coxe, who is admittedly of large experience in such matters, lays down the rule as broadly as that we have cited from Mr. Justice Clifford, to the effect that:

"A trade-mark may consist of a token, letter, sign, or seal. Names, ciphers, monograms, pictures, * * * may be used, and numerals united."

In this case, the use of the numerals "830" was expressly restrained. The latest and most comprehensive work on trade-marks in existence, the fifth edition of Sebastian's Law of Trade-Marks, published in 1911, gives undoubted prominence to Gillott v. Esterbrook, at pages 94, 183, 223, and elsewhere.

A thorough investigation of all the leading works on trade-marks, including Bump, Kerly, and Sebastian, which latter is the latest and standard work covering the law as understood in America, although an English publication, fails to give any case of any importance decided by any court in the United States which would reject the trade-mark in this particular case, although some expressions, if not read carefully, might give a different impression, as, for example, Burton v. Stratton (C. C.) 12 Fed. 696, which runs off into a general discussion of the trade-mark question, stating, on page 700 that no person can obtain a monopoly by the use of "the ordinary numerals or letters." It immediately says, however, that this proposition has been disputed, and cites Gillott v. Esterbrook, already referred to. It rests

this expression, however, immediately on Manufacturing Co. v. Trainer, 101 U. S. 51, 25 L. Ed. 993, which will be found to start out with, as a recognized rule, that letters or figures affixed to merchandise for the "purpose of denoting its quality only" cannot be appropriated as a trade-mark. The word "only," by reflection, sustains the trade-mark in this particular case.

It seems to be admitted, however, that there is some doubt whether, under the English decisions, the rule is sustained to the extent relied on by us. Under the English statutes, as under our own statutes, a numeral may be registered as a trade-mark, although it is only a single distinctive figure. Sebastian's Law of Trade-Marks (5th Ed., 1911) 19, 37, 90, 368, and elsewhere. Browne on Trade-Marks (2d Ed.) § 225, and sequence, seems to sustain a hostile position; but it cites no authority, and fails to appreciate those to which we have referred. Mr. Browne, in discussing this question, assigns decided cases to the class of mere unlawful competition; but he adds nothing to the law, because he attempts this without giving in any instance any special reason for doing so. In fact, we may reassert without hesitation that there is no authority in the United States which directly impugns the use of a numeral arbitrarily applied merely to distinguish the origin of the goods, without reference to their quality, being the precise purpose for which this trade-mark is authorized to be maintained.

On the whole, in conclusion, we rely confidently on the expression of the opinion delivered in behalf of the Supreme Court of Rhode Island in 1888, in American Solid Leather Button Co. v. Anthony, 15 R. I. 338, 339, and 340, 5 Atl. 626, 627, 2 Am. St. Rep. 898, as follows:

"The first question presented for our decision is whether the use of an arbitrary combination of figures to designate the styles of goods which a person makes is entitled to protection. The defendants claim that no protection can be given because such figures, by denoting the style or quality simply, and not origin of the goods, deceive nobody, and hence the rights of the complainant are not infringed. There is some diversity in decisions upon this point, arising mainly from different assumptions of fact by the courts. Undoubtedly, if it be assumed that a given mark indicates quality only, and not origin, it will follow that purchasers of goods so marked have not been misled thereby into the supposition that they were buying a complainant's goods, and hence he would show no cause for relief. All of the cases cited by the defendants, in support of their claim that numbers indicating style or quality cannot be protected, are based upon such an assumption. Where the premises are true, no fault can be found with the conclusion. But it by no means follows, as a rule of law, that marks indicating style or quality may not also indicate origin, and thus be a subject of trade-mark. A person has the right to affix to his goods any device, symbol, or name which he may invent, to distinguish such goods from those made by other people. When the symbol becomes known, in connection with his name, it serves as a sign and pledge of the origin of the goods. People do not often stop to read all that may be printed on a label; nor do they always know the changes that are made in firms or business names. Hence it is that the sight of the familiar symbol, inducing one to purchase goods to which the symbol does not properly belong, to the injury of him who devised it to mark his own goods, is the gravamen of the law of trade-marks.

"Within limits which are well defined, a combination of letters or figures, arranged for convenience or to attract attention, may serve the purpose of a trade-mark, as well as a device intended or arbitrarily selected. So a person

may have different symbols for different grades of goods, which, in the same way, will indicate both quality and origin with respect to the goods so marked.

"A manufacturer may adopt such symbols, not simply to mark *a* style or quality, but *his* style and *his* quality as well. He is entitled to have *his* style and *his* quality protected from misrepresentation, and to have the benefit of any favorable reputation they may have gained. The doctrine applicable to cases of this character is clearly set forth in Shaw Stocking Co. v. Mack (C. C.) 21 Blatchf. 1, 6 [12 Fed. 707], as follows: 'It is very clear that no manufacturer would have the right exclusively to appropriate the figures 1, 2, 3, and 4, or the letters A, B, C, and D, to distinguish the first, second, third, and fourth quality of his goods respectively. Why? Because the general signification and common use of these letters and figures are such that no man is permitted to assign a personal and private meaning to that which has, by long usage and universal acceptation, acquired a public and generic meaning. It is equally clear, however, that if, for a long period of time, he had used the same figures in combination, as "3214," to distinguish his own goods from those of others, so that the public had come to know them by these numerals, he would be protected. The courts of last resort in Connecticut, in Massachusetts, and in New York have distinctly held this doctrine, Boardman v. Meriden Britannia Co., 35 Conn. 402 [95 Am. Dec. 270]; Lawrence Co. v. Lowell Mills, 129 Mass. 325 [37 Am. Rep. 362]; Gillott v. Esterbrook, 48 N. Y. 374 [8 Am. Rep. 553]; the numerals sustained being respectively "2340" "523," and "303."'"

These observations, with all their limitations, apply exactly to the case at bar, even with such detail as to render the change from "108" to "208" ineffectual in behalf of the respondent below.