### TRIMBLE v. WOODSTOCK MFG. CO., Inc.

(District Court, W. D. New York. June 23, 1923.)

1. **Patents ⬤⟿328— 1,079,675, for convertible crib, held invalid for lack of invention.**

 Trimble patent, No. 1,079,675, for convertible crib, *held* invalid for lack of invention, in view of prior art.

2. **Patents ⬤⟿328—1,321,905, for portable crib, held invalid for want of invention.**

 Gannon patent, No. 1,321,905, for portable crib, *held* invalid for want of invention, in view of prior art.

3. **Patents ⬤⟿36—Commercial success held not persuasive of invention.**

 In suit to enjoin infringement of patents for crib, in which the defendant claimed that plaintiff's patents were invalid for lack of invention, the commercial success of plaintiff's cribs was not persuasive of inven-

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

tion, in view of facts showing lack of invention, since the rule making commercial success persuasive of invention applies mainly where the court is in doubt as to whether the device or structure involved the exercise of the inventive faculty.

4. Patents ⬙112(3)—Presumption of validity from grant may be outweighed by facts showing lack of invention.

In suit involving validity of patents, the presumption of validity from the grant itself is ordinarily given weight; but the presumption may be outweighed by facts showing lack of invention.

5. Trade-marks and trade-names and unfair competition ⬙58—Trade-mark "Kiddie-Koop" held infringed by "Kumfy Krib" with similar border.

Trade-mark "Kiddie-Koop," for cribs, with border of animals and figures around a print or picture of a crib, held infringed by trade-mark "Kumfy-Krib."

6. Trade-marks and trade-names and unfair competition ⬙97—Infringement of trade-mark enjoined, without showing actual damages.

The infringement of a trade-mark will be enjoined, without the showing of actual damages.

In Equity. Suit by Edward Maurice Trimble against the Woodstock Manufacturing Company, Inc. Decree dismissing bill in part, and granting plaintiff relief as to other part.

Decree affirmed 297 Fed. 529.

Davis & Simms, of Rochester, N. Y., for plaintiff.
Frederick F. Church, of Rochester, N. Y., for defendant.

HAZEL, District Judge. Infringement of two patents and infringement of a trade-mark are involved herein. One patent was issued to Trimble, No. 1,079,675, on November 25, 1913, for convertible crib; the other to Gannon, No. 1,321,905, on November 18, 1919, for portable crib. The first-mentioned patent describes a folding crib or bassinet, such as described in the prior patent to Carmichael, No. 804,581. The embodiment of plaintiff's structure comprises side and end frames hinged together in such a way as to form a rectangle; the end frames being separated parts hinged at their center, so that one part may fold vertically upon the other. The end frames have lateral extensions, to which the folding parts are hinged on the inner side, and which, when the structure is collapsed, provide space for inclosing the mattress upright when resting on a side edge. When both the end and side frames are hinged together, there is placed within the skeleton a bottom part for supporting springs and mattress. This part is removable. Normally it is supported or pivoted at the bottom by means of open sockets attached to the extensions of the side frames. The specification says:

"These parts [the bottom frame and pivoting means] are used when the device is to be used as a coop, and in this case the opposite side of the bottom is supported by resting upon a longitudinal flange near the bottom."

The pivots and open sockets enable turning up the bottom or floor part laterally, with the mattress between it and the side toward which it is turned; the side extensions giving space for the mattress when turned up on its edge. When the bottom part flatly rests on the flange and open sockets, the end frames are not collapsible; but when it is pivoted upright the end sections fold inwardly toward each other, the

side frames being stationary. In this form the structure is convenient for handling and transportation. When the lower frame supports the mattress in its normal position, it may be elevated in the interior of the crib to about the middle, and there firmly held by eye screws, pins, or projections fastened on the corner posts of the front side frames. It is then usually used as a bed or crib, while with the bottom or spring part in its lower position it becomes a play coop. The claim is for a combination of parts and reads as follows:

"A folding crib having, in combination, a rectangular bottom member, vertical side members of a height substantially equal to the width of the bottom member, end members connecting the side members and adapted to fold to bring the side members toward each other, means, located adjacent the lower edges of the side members, for supporting the bottom in a lower position, the bottom being freely removable, upwardly from said means, and said means, adjacent one side, being pivotal to permit the bottom to be swung to vertical position when the crib is folded, and means for supporting the bottom, horizontally, in a higher position between the side members and the end members."

The essential features of novelty are the asserted means for (a) folding the side frames; (b) arrangement for swinging the bottom frame upright to enable collapsing the crib; and (c) the pins or projections for holding the mattress in an elevated position.

The Gannon structure concededly is a similar type of crib, with the single addition of a pair of props under the mattress frame, formed of suitable rods or bars. The props are pivoted to fold up under said frame, so as to enable conveniently lifting the frame to a higher level, usually to the center of the crib. The claim is not limited to a collapsible crib, and is readable, I think, upon any structure or bed which has a frame or support for the bedding and suitable projections located at a higher level for supporting the mattress frame within the four frames forming the structure.

[1, 2] Defendant contends that both patents in suit are invalid in view of the prior art. They are admittedly in a crowded art. All sorts of stationary and folding cradles, bassinets, cribs, coops, cots, or bedsteads, having conveniences of one kind or another, are drawn to my attention. There are crib structures with collapsible end sections folding inward, one on the other, or one section or part only folding sideways into the crib frame, and cribs with floor frames or springs tilted upward on pivots or in some other way, and held in position with the mattress by the collapsed ends; also eyes, projections, or pins for holding the lower frame and mattress, and similar articles to hold it at a higher level, or cribs for converting play coop inclosure into a suitable sleeping support inclosure.

The prior Carmichael structure was patented in 1905. It has side and end frames hinged at the corners, the side ends being one part or single section only. To collapse the crib, the frames must be disconnected by unscrewing the hinges. The mattress frame or springs, normally resting on a longitudinal flange or rib, may be raised from the bottom or play coop position to a higher elevation for sleeping. The claim to invention herein rests in the main in the adaptation of the bearing support for tilting the mattress frame to a vertical or upright position, so that the crib may be collapsed by turning inward the side

frames. There was, however, in my opinion, no novelty in folding inward the two side ends of the crib. See British patents to Wale (Fig. 3), Wrinch (Fig. 5), Commins, and Fay (Figs. 1 and 2). The Wale patent, in addition to the collapsible feature, has an inclosure for playing by simply sliding the side frame downward in grooves and making the end rails with a lower extension. The only material difference in that relation between it and plaintiff's structure is that in the latter means for holding the mattress upright are provided.

The inward folding end frames of Commins and Fay are in two parts, much like the Trimble patent in suit, and at their edges they are hinged to the ends of the side frame, so as to enable the end sections to enfold, while in the Fay patent there is shown a removable mattress frame, which, upon folding the end of the bars attached thereto, are moved out of their recess and then supported on links located parallel with the side frame.

In Wrinch's patent there are end frames (not in sections) that fold inwardly toward the side. They are connected by slotted guide links, wherein pins are moved similar to defendant's structure to hold the mattress in an upright position between one of the side frames and the end frames. Normally the mattress frame is supported on a side ledge, and it may be folded upward. No means are shown for elevating the mattress above the side ledge; but this absent feature, present in Trimble's structure, was old, and is also shown in Carmichael's "Cariole" crib.

Other prior patents in evidence, Baird, for example, show cribs with an adjustable bottom or mattress support secured by suitable contrivances at different heights. Did the patentee solve a problem by adding means for tilting the mattress and lower frame in combination with the collapsing feature? Was it invention to use bearings in the combination to effect the tilting, so that the mattress and spring could be readily removed from a low level to a higher one? In my opinion, basing the conclusion on the prior state of the art, it was not difficult or troublesome to do these things, or make the additions that were made in a structure like the Carmichael crib. It did not involve a patentable problem. It was an advance, but no invention was required to make it. The patentee himself testified that, upon finding the Carmichael crib inconvenient to carry up and down stairs, he made up his mind to improve on the article, and in a very short time he devised what he called a "Kiddie-Koop," which folded instantaneously with the spring and mattress contained. "It was a matter," he says, "of raising one side of the spring frame to a perpendicular position and folding the ends in. It required, I imagine, two or three seconds to do this." This work does not indicate any difficulty in making the changes in the nearest structure of the prior art. Any skilled mechanic, finding the Carmichael crib inconvenient for taking apart, could supply the thought—the hinges, pins, flanges, or springs for tilting the springs to the side frame.

Assuming that the patentee had before him the prior British patents mentioned above and the Colt patent, describing structures for holding end frames inwardly against the side frames, and in that way holding the mattress frame in an upright position, any difficulties confronting

him in making changes were easily solved. The case is one in which the language of the Supreme Court in Atlantic Works v. Brady, 107 U. S. 192, 2 Sup. Ct. Rep. 225, 27 L. Ed. 438, seems applicable:

"The process of development in manufactures creates a constant demand for new appliances, which the skill of ordinary head workmen and engineers is generally adequate to devise, and which, indeed, are the natural and proper outgrowth of such development. Each step forward prepares the way for the next, and each is usually taken' by spontaneous trials and attempts in a hundred different places. To grant to a single party a monopoly of every slight advance made, except where the exercise of invention, somewhat above ordinary mechanical or engineering skill, is distinctly shown, is unjust in principle and injurious in its consequences."

The single claim in the Gannon patent reads as follows:

"In combination, a crib frame, supporting sills carried by said frame, a mattress resting on said sills, and pivoted supports adapted to be moved into position with their free ends resting on the side sills to support said mattress above the sills."

The mattress frame in that structure, as hereinbefore pointed out, is made to rest upon sills in the interior of the crib. It has the pivoted supports for holding it in place above the sills. The important changes made over the prior structures, including Trimble's, in supporting the mattress frame at a higher level by pivoted props which were foldable underneath the springs were suggested by the patents to Hogan & Meinecke, Bonheim, Powers, and Guibord which have underside pivoted supports, some arranged in pairs. To adapt this well-known form of prop support in a crib of the Carmichael and Colt type was not invention.

[3, 4] The commercial success of plaintiff's cribs in this case is not persuasive of invention. That rule applies in the main to cases wherein the court is in doubt as to whether the structure or device involved the exercise of the inventive faculty. Although the presumption of validity from the grant itself is ordinarily given weight, yet the facts here, in my estimation, outweigh this presumption.

[5] The bill also alleges infringement of trade-mark arising from the employment by plaintiff of the brothers Kennedy, who, without plaintiff's knowledge, made asserted improvements in the structure "Kiddie-Koop," and in September, 1917, after obtaining letters patent for an improvement, left their employ and began business on their own account. They named their crib "Kumfy-Krib." Later on they sold their patent and business to the defendant company, which before this time had been manufacturing "Kiddie-Koop" cribs at its mill for the plaintiff. Plaintiff severed his dealings with defendant upon deciding to make his own cribs. In the sale of its structure, defendant continues to use the name "Kumfy-Krib," given it by the Kennedys, which designation, in my opinion, is an imitation of plaintiff's arbitrary and fanciful designation, registered as a trade-mark on December 22, 1914. See "Uneeda" and "Iwanta" Biscuit Case (National Biscuit Co. v. Baker) 95 Fed. 135.

[6] Plaintiff's advertisements in the periodical Good Housekeeping of his trade-mark, with its border of animals and figures around a print or picture of the crib, were, as the evidence shows, afterwards

simulated by defendant in the same publication in also having around its trade-mark "Kumfy-Krib" a print or picture of its crib or bassinet and a border of animals and figures surrounding it. Its designation and method of advertising was a plain appropriation of the prior trade-mark "Kiddie-Koop," and was adapted with the intent and purpose of palming off its cribs upon the buying public for plaintiff's. It makes no difference that no deception, confusion, or loss of business to plaintiff was proven. It is enough that a valid trade-mark has been clearly infringed, and that the publication of defendant's simulated designation, with similar border surrounding it, was designed to unfairly compete.

It is unnecessary to show actual damages before the issuance of an injunction in such a case as this. Gannert v. Rupert, 127 Fed. 962, 62 C. C. A. 594. It follows that a decree may be entered dismissing the bill, alleging infringement of the Trimble and Gannon patents in suit, for lack of invention, and in favor of the plaintiff for infringment of his trade-mark in unfair competition, but without accounting, and an injunction may issue enjoining the defendant company from using the trade-mark "Kumfy-Krib" and methods of advertising the same, and also against similar colorable simulations of plaintiff's trade-mark, without costs to either party.