## HYGIENIC PRODUCTS CO. v. JUDSON DUNAWAY CORPORATION.

Civ. No. 668.

United States District Court
D. New Hampshire.

Dec. 23, 1948.

938

Sulloway, Piper, Jones, Hollis & Godfrey, Frank J. Sulloway and Irving H. Soden, all of Concord, N. H., and Frease & Bishop, of Canton, Ohio, for plaintiff.

McLane, Davis, Carleton & Graf and John P. Carleton, all of Manchester, N. H., and Emery, Varney, Whittemore & Dix, and Manvel Whittemore, all of New York City, for defendant.

CONNOR, District Judge.

This is a suit for trade-mark infringement and unfair competition brought by The Hygienic Products Company, an Ohio corporation, having its principal place of business in the city of Canton, Ohio, against the Judson Dunaway Corporation, a New Hampshire corporation, having its principal place of business in the city of Dover, New Hampshire. Suit is brought pursuant to the provisions of section 17 of the Trade-Mark Act of 1905, 33 Stat. 728, 15 U.S.C.A. § 97. Jurisdiction is also based upon diversity of citizenship, and the matter in controversy exceeds, exclusive of interest and costs, the sum and value of $3,000.

### Findings of Fact.

The plaintiff was incorporated in 1908, and in April 1911 placed on the market a toilet bowl cleaner under the name "Sani-Flush" and has engaged in the manufacture and sale of same in interstate, intrastate, and foreign commerce since that date. It was the first to manufacture a powdered chemical for the cleaning of toilet bowls by chemical reaction, and applied for and was granted Letters Patent No. 1,048,575 on December 31, 1912, and Letters Patent No. 1,124,664 on January 12, 1915, covering its product, the last of which expired in 1932. As is more particularly set forth in plaintiff's patents, the product is a white chemical compound the principal ingredients of which are bisulphate of soda (80%), sodium chloride (15%), and powdered soapstone (5%). This chemical compound when put in water creates a chemical reaction forming hydrochloric acid, a chemical that cleans the lime and rust deposits which accumulate on the inside of toilet bowls and automobile cooling systems. Although plaintiff's product originated as a toilet bowl cleaner, it is likewise used for cleaning automobile radiators. This product is ineffective to accomplish the desired cleaning result except when used in the presence of water, which is essential to produce the chemical reaction which ultimately does the cleaning. As a necessary requisite for effective use of its product, there are printed on the containers full directions, setting forth in detail the successive steps which must be taken in order that the product accomplish its purpose. Upon commencing manufacture, the plaintiff adopted, and has since continually and exclusively used as its trade-mark to indicate the origin of its product, a pictorial representation of a maid pouring from a can into a toilet bowl, and, so far as appears, was the first to adopt and use this pictorial representation. The plaintiff has secured under the Trade-Mark Act of 1905, 33 Stat. 724, trade-mark registrations for a cleaning powder for water-closet bowls and automobile radiators, which registrations it still owns and which have not expired and are described as follows:

| No. | Date |
| --- | --- |
| 108,251 | Jan. 25, 1916 |
| 263,929 | Nov. 12, 1929 |
| 298,650 | Nov. 1, 1932 |
| 372,096 | Oct. 24, 1939 |
| 372,097 | Oct. 24, 1939 |
| 374,844 | Jan. 30, 1940 |
| 374,845 | Jan. 30, 1940 |

Trade-mark registration certificates Nos. 108,251, 263,929, 298,650, 372,096, 372,097

have not been used by the plaintiff on its product since about 1938. The plaintiff has always been alert in discovering and protesting any invasion of its trade-mark rights. The plaintiff's product is now and since prior to 1937 has been sold in a can which is predominantly yellow, has three yellow panels, bordered with blue and white lines, with the plaintiff's trade-mark "Sani Flush" prominently displayed in red letters, and upon one of which panels appears a pictorial representation of a maid standing beside a toilet bowl and holding in her left hand a can of plaintiff's product from which material is falling into the toilet bowl. Accompanying the plaintiff's picture trademark on each can of its product has always appeared the legend "For Cleaning Toilet Bowls," together with the slogans "Quick" "Easy" "Sanitary" and "Cleans Without Fuss or Muss." Since 1911 the plaintiff has manufactured and sold over four hundred million cans of said product, representing a sales value to consumers in excess of $80,000,000, and has expended approximately $8,000,000 in advertising its product, always in connection with this picture trade-mark. This advertising has been national in scope, and has been done largely through the media of magazines and newspapers, display cards and leaflets. On each can of the product there has been placed adjacent to the picture trade-mark the statutory notice "Reg. U.S. Pat. Off."

Shortly prior to 1937 the defendant developed a toilet bowl cleaner and bathroom deodorant which contains, among other things, the combination of ingredients which until 1932 was covered by plaintiff's patents. In 1937 the defendant commenced to manufacture a chemical compound for cleaning toilets which it marketed under the trade-mark "Vanish" duly registered in the United States Patent Office, and it has since built up a large and prosperous business in this field. For approximately ten years the defendant competed with the plaintiff in the manufacture and sale of its product without attempting to interfere with the plaintiff's use, as a trade-mark, of the pictorial representation of a maid pouring from a can into a toilet bowl. During this period the defendant's president and principal stockholder had knowledge

that the plaintiff was using as its trademark the above pictorial representation and that it was of great value to the plaintiff. The defendant advertised its product by means of leaflet folders, display cards, window streamers, and the like, which show a can of Vanish suspended above a toilet bowl with material flowing from the can into the toilet bowl. Another of the advertisements used prior to the claimed date of infringement shows a female holding a can of Vanish from which material is falling toward a toilet bowl which is not shown in full but is indicated by a raised toilet-seat cover. In June 1946 the defendant commenced to use a display card showing a woman holding a can of its product over a toilet bowl. In December of the same year, the defendant acquired and commenced distribution of small leaflets, advertising the product Vanish, and thereon is a picture of a woman holding a can of Vanish over a toilet bowl with material flowing from the can into the toilet bowl. During March and April 1947, for a period of about six weeks, the defendant caused to be published in a number of newspapers an advertisement of its product, illustrated with a similar pictorial representation. At about the same time, it caused another advertisement of its product Vanish to be published in newspapers, this being illustrated by a representation of a toilet bowl, with a hand holding a can of defendant's product poised over the toilet bowl, and material flowing from the can thereinto. When the defendant commenced the manufacture and sale of its product, it was packaged in a can different from that which is now on the market. Some time in 1942 the defendant adopted and has since used a new style of can which is taller than its former can, is of cylindrical shape, and is printed in dark blue with white letters. These cans used by the defendant are dissimilar to those used by the plaintiff as to size, color, and advertising material. The front panel of the can portrays a toilet bowl with an indication of material falling from the letter "I" of the word "VANISH" into the toilet bowl. On the back of the can there is a central panel with the words "Vanish" at the top, followed by directions for use, and the name of the defendant

at the bottom, with two narrow side panels each depicting a toilet bowl with a bathroom background. No evidence was introduced that any one has in fact been deceived by defendant's advertising in the purchase of defendant's product in the belief that plaintiff's product was being supplied.

The complaint is directed, not to defendant's cans or what is printed thereon, but rather to the defendant's advertising devices, consisting of leaflets, display cards, and newspaper advertisements, which portray a woman pouring from a can into a toilet bowl. The defendant's newspaper advertisements and display cards do not in any way display the defendant's name, nor do the leaflets except in very small type on the back page thereof completely disassociated with the complained of picture. The "Vanish" can bears the defendant's name on the back thereof, and when placed in the display card, which is one item of complaint, the defendant's name is nowhere visible to one looking at the display, either on the card itself or on the can which is placed therein. The complained of advertising by the pictorial representation came to the attention of the plaintiff through its salesmen in various parts of the country, and thereupon the plaintiff, through its counsel, duly notified the defendant by registered mail on April 2, 1947, that it asserted market trade-mark infringement and unfair competition by use of such advertising matter. Shortly thereafter the present action was brought, and by agreement of parties, in lieu of injunctive order, the objected to advertising matter, leaflets, display cards, and newspaper advertisements were withdrawn from use. The defendant in its answer, as amended, denies the validity of the plaintiff's trade-marks, and infringement thereof, and alleges that certain of the marks have been abandoned. Defendant further filed a counterclaim in which it asks cancellation of the plaintiff's several trade-marks pursuant to Section 37 of the Trade-Mark Act of 1946, 15 U.S.C.A. § 1119, and for its costs.

#### Discussion.

As above set forth, no complaint is asserted either of infringement or unfair competition concerning the design or printed matter on the containers used by the defendant. The complaint is directed wholly to the advertising devices alleged to have been used by the defendant, such as leaflets, display cards, and newspaper ads. On the foregoing facts, the following questions are presented:

1. Are plaintiff's trade-mark registrations valid and in full force?

2. Have the plaintiff's trade-marks been infringed by the acts of the defendant?

3. Has defendant been guilty of unfair competition?

4. To what extent, if at all, does the Trade-Mark Act of 1946 apply?

A trade-mark is a sign, symbol, or device, not previously appropriated, and adopted and used by a manufacturer to distinguish his goods from goods of the same general nature manufactured or sold by others. The exclusive right of the use of a trade-mark is in the priority of appropriation, that is, the claimant of a trade-mark must have been the first to use or employ the same on like goods, and the fact that it is registered is prima facie evidence of its validity. Trade-Mark Cases, 100 U.S. 82, 94, 25 L.Ed. 550; Columbia Mill Co. v. Alcorn, 150 U.S. 460, 464, 14 S.Ct. 151, 37 L.Ed. 1144.

It is not disputed that the plaintiff was the first to manufacture a product for the cleaning of toilet bowls by chemical reaction. The plaintiff adopted and used a pictorial representation as a unique symbol or device to indicate the origin of the goods of its manufacture and to distinguish them from goods of the same general nature which might be manufactured by others. It seems well settled that the first to adopt and use an arbitrary and forceful symbol or device to indicate the origin, and as a mark to distinguish from other or similar goods, is entitled to the exclusive use thereof and will be afforded the protection of the law. "Every one is at liberty to affix to a product of his own manufacture any symbol or device, not previously appropriated, which will distinguish it from articles of the same general nature manufactured or sold by others, and thus secure to himself the benefits of increased sale

by reason of any peculiar excellence he may have given to it. The symbol or device thus becomes a sign to the public of the origin of the goods to which it is attached, and an assurance that they are the genuine article of the original producer. * * * It becomes his trade-mark, and the courts will protect him in its exclusive use, * * *." Amoskeag Manufacturing Co. v. Trainer & Sons, 101 U.S. 51, 53, 25 L.Ed. 993. See also Mishawaka Rubber & Woolen Manufacturing Co. v. S. S. Kresge Co., 316 U.S. 203, 204, 62 S.Ct. 1022, 86 L. Ed. 1381. The long, continued, and exclusive use of the symbol has come to denote origin, and distinguishes the goods of the plaintiff from those of others, thus qualifying it as a trade-mark properly registered under the Act of 1905. Grove Laboratories v. Brewer & Co., 1 Cir., 103 F.2d 175. The Act of 1905 provides "That the registration of a trade-mark * * * shall be prima facie evidence of ownership". Section 16, 33 Stat. 728. The Act of 1946 (however material it may be in the instant case) provides that registration "shall be prima facie evidence of * * * registrant's exclusive right to use the [registered] mark * * *." 15 U.S.C.A. § 1057 (b). The foregoing does not, of course, preclude an attack upon the ownership or validity of the mark. Dwinell-Wright Co. v. National Fruit Product Co., Inc., 1 Cir., 129 F.2d 848, 851. It is admitted that in none of the several registration proceedings had at the Patent Office was there ever any objection raised by the Patent Office Commissioner or by interested parties as to the validity of the plaintiff's picture trade-mark on the ground of descriptiveness or on any other ground. A registered trade-mark is presumed to be valid, Vickers, Inc., v. Fallon, D.C., 48 F.Supp. 221, and, as bearing on the presumption of validity, the language employed in Coca-Cola Co. v. Dixi-Cola Laboratories, Inc., D.C., 31 F.Supp. 835, 842, appears particularly pertinent. Therein the court stated: "By express provision of the Act of 1905, Section 16, 15 U.S.C.A. § 96, registration is prima facie evidence of ownership; and although the Act does not provide that registration is prima facie evidence of the trade-mark's validity, since the Patent Of-fice is not authorized to register anything but a trade-mark, registration involves consideration by the Commissioner of Patents whether the device, for which registration is sought, may be the subject of exclusive appropriation as a trade-mark; and, therefore, the Commissioner's decision regarding that question is entitled to respect as being prima facie correct." While the registration of a trade-mark is not conclusive evidence of its validity, the presumption that it is must be recognized until successfully met by competent evidence.

The defendant in attacking the validity of the plaintiff's trade-mark registrations lays great stress upon the claim that they are descriptive in that they describe the plaintiff's product pictorially. The defendant claims that in this form the issuance of such registration is in conflict with Section 5 of the Trade-Mark Act of 1905, 33 Stat. 725, as amended 15 U.S.C.A. § 85, which provides in part as follows: "No mark by which the goods of the owner of the mark may be distinguished from other goods of the same class shall be refused registration as a trade-mark on account of the nature of such mark unless such mark * * * consists * * * merely in words or devices which are descriptive of the goods with which they are used, or of the character or quality of such goods, * * *."

It is the defendant's position that the Patent Office overlooked and ignored the descriptive significance of the plaintiff's alleged trade-marks and wrongfully registered the same, and that this court should find that they are descriptive and therefore invalid. The question posed is whether the disputed mark falls within this category. The language of the statute is to be given its ordinary and usual meaning, with special emphasis on the words "descriptive," "character," and "quality." The pictorial representation depicts a female pouring a substance from a can into a toilet bowl. There is no explanation as to the purpose of the act portrayed or the result accomplished; there is no clue or hint as to the contents of the can or whether it is a liquid or other substance; nor is there any suggestion as to the character or quality of the material poured. In the light of the foregoing, one

is left to speculate as to the purpose of the act illustrated, and the objective is made clear only by examination of the directions imprinted on the can and which are not part of the mark. It is my view that a mark may pictorially show the use of a product without offending the statute which forbids description of the character and quality of the goods. In the instant case, the mark describes the use to which the product is put and does not portray a device which is descriptive of the plaintiff's goods. While it is true that the legend "Sani-Flush" would import some method of asepsis or household hygiene, it is not one which is descriptive of the product, for, without the explanation set forth in the directions on the container, the term is susceptible to many inferences. Nor is the picture a device which is descriptive of the goods or product. Considered separately or conjunctively, neither the goods nor their quality or character is described. It is an artificial and fanciful symbol or device intended to indicate the origin of the goods to attract the custom of the public, and resort to the power of suggestion is within the bounds of fair commercial appeal. The term "use" is not included in the statute and the text does not permit of such implication. As above stated, neither the picture nor the legend describes with sufficient clarity to be understood by the average shopper the function or use of the product; and such must be ascertained by reading the matter imprinted in large type on the container.

In Stern v. Barrett Chemical Co., 29 Misc., N.Y., 609, 61 N.Y.S. 221, 223, it was said that to condemn a term as descriptive "its description must import information as to the general characteristics and composition of the article to which it applies." The trade-mark here considered is in no way merely descriptive of the character of the plaintiff's product, which consists of a white powder, the chemical components of which are sodium bisulphate, sodium chloride, and soapstone. In contact with water the result is a chemical reaction producing hydrochloric acid which cleans the lime and rust from the inside of a toilet bowl or an automobile cooling system. This result can be accomplished only when used in combination with water, and only then when the printed directions on the can are fully and accurately followed. Similarly, there is nothing in the picture which would in any way describe the quality of the plaintiff's product. The mark does not illustrate the use, directions, chemical reaction, or procedural steps, all of which are vital and important in the use of the product. Even though the illustration connotes the ease of use and may be characterized as suggestive, this does not ban it as a bad mark. If the words are merely suggestive of the character of the goods or the properties which the users of the mark wish the public to attribute to them and are not merely descriptive, the mark will be good. Reardon Laboratories v. B. & B. Exterminators, 4 Cir., 71 F.2d 515, 517. See also Holeproof Hosiery Co. v. Wallach Bros., 2 Cir., 172 F. 859; Globe-Wernicke Co. v. Brown, C.C., 121 F. 185. The creation and adoption of the mark was, as stated in Fitch Co. v. Camille, Inc., 8 Cir., 106 F.2d 635, 640, " * * * intended to convey some idea of the use to which the product may be applied, but, certainly, education was required to acquaint the public with the significance of the term and the possible use of the product. To the extent that it has built up a good will so that its name is in the mind of the public connected with its product, plaintiff is entitled to protection * * *." In dealing with the terms "descriptive" and "suggestive," the court in Le Blume Import Co. v. Coty, 2 Cir., 293 F. 344, 351, said as follows: "The general rule is unquestionable that a word which is descriptive of the article upon which it is used, of its ingredients, quantities, or characteristics, cannot be a valid trademark. * * * The rule, however, is not without qualification. The cases show that the courts under certain circumstances protect the use of words as trade-marks, even though they suggest the ingredients, qualities, or characteristics of the goods. The distinction is between words which are 'descriptive' and those which are merely 'suggestive.' Neither is it necessary that words to be available as trade-marks should carry no suggestion of any meaning. The line of demarcation may not be easy to draw but it exists. * * *"

■ It is a further contention of the defendant that all but two (Exhibits A-6 and A-7) of plaintiff's trade-marks should be canceled on the ground of abandonment. It is undisputed that the figure of the maid standing beside the toilet bowl and pouring from a can thereinto is not the same as that used on the containers prior to 1938. Both of these marks were registered in 1940, and differ from the prior marks only in the posture of and style of dress worn by the maid shown thereon, and were intended to be a modernized version of the other illustration. The defendant concedes that the question of abandonment is one of fact to be decided upon all of the evidence. It is well settled that in order to establish abandonment of a trade-mark as a matter of law, there must be either actual intent to abandon or else a showing of circumstances from which such an intention may properly be inferred. The issue is one of affirmative defense and thus the burden would be upon the defendant.

■ In this aspect of the case, the defendant's evidence does not support its contention. On the evidence, it is plain that the plaintiff did not after 1938 use on its cans the socalled old registered trademark, but it adopted the modernized illustration which it registered in 1940 and used the old style only in advertisements. Two of the officers of the corporation testified that it was not and never had been the intention of the company to abandon these marks and that it intended to use them in the business of the company. The leading case upon this question seems to be Saxlehner v. Eisner & Mendelson Co., 1900, 179 U.S. 19, 31, 21 S.Ct. 7, 45 L.Ed. 60, cited with approval in other decisions wherein this issue was raised. The court held: "To establish the defence of abandonment it is necessary to show not only acts indicating a practical abandonment, but an actual intent to abandon. Acts which unexplained would be sufficient to establish an abandonment may be answered by showing that there never was an intention to give up and relinquish the right claimed." To the same effect are Singer Mfg. Co. v. June Mfg. Co., 163 U.S. 169, 186, 16 S.Ct. 1002, 41 L.Ed. 118; Livermore v. White, 74 Me. 452, 43 Am.Rep. 600;

Judson v. Malloy, 40 Cal. 299; Hickman v. Link, 116 Mo. 123, 22 S.W. 472. In Baglin v. Cusenier Co., 1911, 221 U.S. 580, 597, 598, 31 S.Ct. 669, 674, 55 L.Ed. 863, citing the above decision, the court said: "There must be found an intent to abandon, or the property is not lost; and while, of course, as in other cases, intent may be inferred when the facts are shown, yet the facts must be adequate to support the finding." In Hanover Star Milling Co. v. Metcalf, 1916, 240 U.S. 403, 419, 36 S.Ct. 357, 362, 60 L.Ed. 713, it was held that "Abandonment, in the strict sense, rests upon an intent to abandon"; and the court further declared that it had "no purpose to qualify the authority of Saxlehner v. Eisner," supra. The unequivocal testimony of the officers of the company that it was their intention to retain the trade-marks for their business, and their denial that it was intended to abandon them, appears of sufficient force to warrant denial of the claim of the defendant in this respect.

■ We next come to the issue of whether the plaintiff's trade-marks have been infringed by the acts of the defendant. The burden is upon the plaintiff to show that the use by the defendant of the complained of material was calculated to deceive ordinary purchasers and to create confusion in the trade. This may be sustained by proving that the material did deceive purchasers, or by demonstrating, through comparison, that, as made up and displayed by the defendant, it was so similar as to deceive or be likely to deceive purchasers. Cleo Syrup Corporation v. Coca-Cola Co., 8 Cir., 139 F.2d 416, 418, 150 A.L.R. 1056. The plaintiff's claim of infringement is directed solely at the use by the defendant in its advertising material of a picture of a maid pouring from a can into a toilet bowl. The pertinent section relied upon in support thereof, Section 16 of the Trade-Mark Act, 33 Stat. 728, 15 U.S.C.A. § 96, provides in part as follows: "Any person who shall, without the consent of the owner thereof, reproduce, counterfeit, copy, or colorably imitate any such trade-mark and affix the same to merchandise of substantially the same descriptive properties as those set forth in the registration, or to labels, signs, prints, pack-

ages, wrappers, or receptacles intended to be used upon or in connection with the sale of merchandise of substantially the same descriptive properties as those set forth in such registration, * * * shall be liable to an action for damages therefor at the suit of the owner thereof; * * *."

The legal test of infringement is the likelihood of consumer confusion. The principle is concisely stated in Coca-Cola Co. v. Snow Crest Beverages, 1 Cir., 162 F.2d 280, 283, in the following language: "That is to say, the test to determine whether the defendant has violated the plaintiff's right to the exclusive use of its mark is to inquire whether the defendant has carried on its business in such a way as to make it likely that ordinary purchasers of its goods would confuse them with those of the plaintiff. And we have held in this circuit that this ultimate question of the likelihood of consumer confusion as to source is one of fact." The authoritative case on this issue appears to be McLean v. Fleming, 96 U.S. 245, 251, 255, 24 L.Ed. 828, wherein it was held: "What degree of resemblance is necessary to constitute an infringement is incapable of exact definition, as applicable to all cases. All that courts of justice can do, in that regard, is to say that no trader can adopt a trade-mark, so resembling that of another trader, as that ordinary purchasers, buying with ordinary caution, are likely to be misled. * * * Difficulty frequently arises in determining the question of infringement; but it is clear that exact similarity is not required, as that requirement would always enable the wrong-doer to evade responsibility for his wrongful acts. * * * Where the similarity is sufficient to convey a false impression to the public mind, and is of a character to mislead and deceive the ordinary purchaser in the exercise of ordinary care and caution in such matters, it is sufficient to give the injured party a right to redress, if he has been guilty of no laches." The protection which is to be accorded the legal owner of a valid trade-mark extends beyond the sole use thereof in the marketing of his product by various forms of container merchandising. Even though the statute does not include the term "advertising," it has been construed that "signs" and "prints" used in advertising constitute a use of such material "in connection with the sale of merchandise." There is ample authority to the effect that leaflets, display cards, and newspaper advertising will support a claim of infringement. In Rosenberg Bros. & Co. v. Elliott, 3 Cir., 7 F.2d 962, 967, it was said that "advertisements tend readily to deceive the public." Advertisements were also the grounds for complaint of infringement in Jantzen Knitting Mills v. Spokane Knitting Mills, D.C., 44 F.2d 656; Trimble v. Woodstock Mfg. Co., D.C., 297 F. 524, 528. The exhibits in the form of leaflets, display cards, and newspaper advertisements used by the defendant to promote the sale of its products have definite points of similarity with the trade-mark of the plaintiff. Primarily, both depict the necessary act involved in the use of their respective products, which is the pouring of material into a toilet bowl. Four factors, the bathroom, the maid, the act of pouring from a can, and the bowl, are common to both the trade-mark and the advertising portrayals. Thus considered, the advertising material must be characterized as a colorable imitation of the plaintiff's trade-marks. Concededly there are variations, and this would necessarily be so if exact reproduction was to be avoided; but the differences are minor, such as the apparent age and attire of the respective maids. In two of the display cards used by the defendant was a cut-out wherein was placed for display a can of its product, with a large part of the card given over to a picture of a young woman in the act of pouring a can of material into a toilet bowl. Such would readily tend to confuse a prospective customer in the purchase of this type of product. The test of trademark infringement "is whether the goods of the alleged infringer would be supposed by the kind of people who purchase them to emanate from the same source as the goods of the complainant." Dwinell-Wright Co. v. National Fruit Product Co., 1 Cir., 140 F.2d 618, 622. The psychology of sales appeal is best utilized by pictorial design, and here the dominant feature in the mark and advertising material is the picture of the maid, which would impress the memory of the average buyer. This situation resembles to some degree that which

obtained in Layton Pure Food Co. v. Church & Dwight Co., 8 Cir., 182 F. 35, 32 L.R.A.,N.S., 274. That action dealt with labels similar in design; here the subject matter is that of trade-mark and advertising material where in design the similarity is definitely marked. In the cited case, both labels pictured a cow, and while the colors, words, and devices thereon were different, the court held that the picture of the cow was so dominant and striking a feature that buyers exercising the care which they would ordinarily use would be induced to purchase articles of the defendant in the belief that they were those of the plaintiff. While no evidence of any instance of actual customer confusion was introduced, this is not a bar to a consideration of the question. LaTouraine Coffee Co. v. Lorraine Coffee Co., 2 Cir., 157 F.2d 115; George W. Luft Co. v. Zande Cosmetic Co., 2 Cir., 142 F.2d 536. The test of deceptive similarity appears to be whether ordinary purchasers, buying under ordinary conditions, and exercising ordinary care, would likely be induced to purchase an article of the defendant's believing it to be the plaintiff's article, the similarity in this instance being the claimed appropriation of the figure of the maid in the act of pouring. The test may be applied by comparing and contrasting the complained of material with the purchaser's assumed memory of the plaintiff's trade-marks. Seven Up Co. v. Cheer Up Sales Co., 8 Cir., 148 F.2d 909; Hostetter v. Adams, C.C., 10 F. 838; S. S. Kresge Co. v. Winget Kickernick Co., 8 Cir., 96 F.2d 978.

■ Having in mind the test by which the defendant's complained of conduct is to be measured. I am of the opinion that the mode of advertising which the defendant has adopted would likely be misleading and result in consumer confusion, and, as such, is an infringement on the plaintiff's right to the exclusive use of the trade-mark.

. ■ The complainant also charges that the defendant "willfully and with intent to deceive, unfairly and unlawfully competed with the plaintiff by offering for sale and dispensing a cleaning powder by the use of its advertising leaflets, display cards, and newspaper advertisements, each containing the picture of a maid pouring from a can into a water-closet bowl, thereby falsely indicating the origin of its cleaning powder; and has knowingly sold and distributed this cleaning powder in inter-state commerce." The charge of unfair competition is limited to the same acts alleged in support of the claim of trade-mark infringement, viz., the use of display cards, leaflets, and newspaper advertisements. "Unfair competition consists in the use of methods, brands or advertising matter intended to cause, or in fact causing confusion in the trade, or to induce or mislead the trade into the belief that the goods of the person or firm marketed under such similar device are the goods of the person or firm who has established a trade and acquired a good will in business in connection with the rightful use of such trade token." Peters Milling Co. v. International Sugar Feed Co., 6 Cir., 262 F. 336, 340. "Whether the complainant's action proceeds upon the ground of infringement of a trade-mark or upon the ground of unfair competition, there is one element common to both rights which it is essential for it to establish, and that is that the dress of the alleged infringing or competing article is so similar to the one competed with that it is probable the purchasing public, while in the exercise of reasonable care, will be deceived and led to purchase the competing article for that of the complainant with consequent injury to his trade. In the case of infringement of a technical trade-mark the intention of the infringer is immaterial, as the essence of the wrong lies in the injury to a property right; while in the case of unfair competition the intention is material, to establish fraud on the part of the defendant in the use of the imitative device to beguile the public into buying his goods as those of his rival. In the former case fraud, if material, is presumed; while in the latter the complainant must prove a fraudulent intent, or show facts and circumstances from which it may reasonably be inferred." Goldsmith Silver Co. v. Savage, 1 Cir., 229 F. 623, 627.

The undisputed facts are that the plaintiff has been in the manufacture of its product

946

for thirty-five years, and the marks to indicate the origin of those goods have been in continuous and exclusive use by the plaintiff in the retail sale of millions of its units since their adoption. It would seem to follow as a necessary conclusion that it has a large and definite measure of good will in connection with the use of its picture trade-mark which is of great value to the plaintiff and which is entitled to protection. Protection is to be accorded "the business man who has gained a strategic advantage, through building up of good-will, against unfair practices by competitors who desire to poach on that good-will." Eastern Wine Corporation v. Winslow-Warren, Ltd., 2 Cir., 137 F.2d 955, 958.

 The defendant, a relatively new competitor in the field of toilet bowl cleaners, manufactured and sold its product under its own trade-mark for a period of approximately ten years before it decided to adopt the type of pictorial advertising above described. It appears that the defendant's business prospered, and that no difficulty was experienced in adequately describing its product by means of its own registered trade-mark and by its sales promotion and advertising. The motive prompting the defendant to use the objected to advertisements was to increase its sales, and hence it could be inferred that it sought to divert some of the plaintiff's trade profits thereby. Both forms of advertising would probably result in consumer confusion, and would differ only in degree, with the display cards containing the insert likely to be the most effective. "The decisions hold that a manufacturer who deliberately copies a competitor's wares, containers, advertising matter, trade name and the like competes unfairly and must be presumed to have done those acts with the intention of misleading the purchasing public and thus acquiring some of his competitor's good will and business. If he had the intention of misleading the public 'his purpose is some evidence that there is a confusing similarity.'" Swanson Mfg. Co. v. Feinberg-Henry Mfg. Co., D.C., 54 F.Supp. 816, 818. It is difficult to believe that the adoption of this design, so similar to that of the plaintiff, was solely a coincidence, and this despite the defendant's knowledge that the plaintiff had used this symbol for many years.

In these circumstances, intent may reasonably be inferred.

The plaintiff in its petition prays for a decree adjudging the picture trade-marks and respective registrations thereof as contained in the complaint, and each of them to be owned by the plaintiff, to be valid, and to be infringed by the defendant; and that the defendant has unfairly competed with the business of the plaintiff; for a permanent injunction to issue, perpetually enjoining and restraining the defendant, and its agents, from any further infringing or unfair use of the plaintiff's picture trade-marks or any parts thereof, and from any other unfair competition with the plaintiff's business, in violation of plaintiff's rights; for a mandatory order directing that the defendant deliver up and destroy all leaflets and display cards, and all other advertisements in its possession or control bearing the picture trade-mark of the plaintiff, or any reproduction, counterfeit copy, or colorable imitation thereof, and also to be ordered to deliver up for destruction all infringing and unfair copies of leaflets, display matrices, and other means for making infringing and unfair copies of leaflets, display cards, and advertisements; and further that the defendant may be decreed to account for and pay to the plaintiff the profits or income unlawfully derived from the infringements and unfair violations of the plaintiff's rights in the premises, and that upon entering a decree against the defendant for such infringements, the court may proceed to assess, or cause to be assessed under its direction, the defendant's unlawful profits and income, and in addition thereto, the damages sustained by the plaintiff by reason of defendant's said infringements and unfair competition, together with costs of this proceeding, and that the court increase the actual damages so assessed to a sum equal to three times the amount of such assessment, under the circumstances of the wilfull and unjust nature of said infringement and unfair competition.

 Under the claim of unfair competition, as in that of infringement, the

record is barren of any proof of damages. The burden is upon the complainant to prove that it is entitled to damages or profits prior to the date alleged in the bill, and barring such proof, none can be awarded. The court must be furnished with some factual basis in order to formulate an award. No evidence was adduced that a single sale had been made as a result of any unlawful conduct of the defendant, that the plaintiff's profits were affected or its sales decreased; nor was there any evidence that sales made by the defendant diverted what otherwise would have gone to the plaintiff. Similarly, in respect to the complainant's prayer for an accounting of the profits or income of the defendant. To be allowed damages or an accounting of profits, the complainant is bound to establish loss of sales. Gallet et al. v. R. & G. Soap & Supply Co., 2 Cir., 254 F. 802, 804. There being no evidence of lost sales, neither damages may be allowed nor an accounting ordered. Rosenberg Bros. & Co. v. Elliott, supra; Horlick's Malted Milk Corp. v. Horluck's, Inc., 9 Cir., 59 F.2d 13, 17. "Those cases in which plaintiff * * * has been awarded all the profits which defendant received from the sale of the articles wrongfully trade-marked, have been cases in which, by the theory of the law, the plaintiff had lost the sales." Vogue Co. v. Thompson-Hudson Co. et al., 6 Cir., 300 F. 509, 512, 513.

The plaintiff's relief, therefore, will be confined to mandatory and injunctive orders.

The defendant contends that the present action is within the purview of the Trade-Mark Act of 1946. The Act, P.L. 489, which was enacted July 5, 1946, and became effective July 5, 1947, 15 U.S.C.A. § 1051 et seq., Section 46(a) of which provides that: "This Act shall be in force and take effect one year from its enactment, but except as otherwise herein specifically provided shall not affect any suit, proceeding, or appeal then pending." 60 Stat. 444. This suit was filed May 31, 1947, and on the effective date of the Act, July 5, 1947, was then pending. Thus the Act by its express provisions is without application to this action.

### Conclusions of Law.

1. This court has jurisdiction under the Trade-Mark Act of 1905, Title 15, U.S.C.A. Chapter 3, §§ 81 to 109, and under the Judicial Code, Title 28 U.S.C.A. §§ 41(1), 41(7) [now §§ 1331 et seq., 1338].

2. Plaintiff is the owner of unexpired trade-mark registrations Nos. 108,251, 263,-929, 298,650, 372,096, 372,097, 374,844, and 374,845, and is the owner of the trade-mark comprising the representation of a maid or woman pouring from a can into a toilet bowl registered thereby for cleaning powder for toilet bowls and automobile radiators and is the owner of the good will of the business in which said trade-mark is used and of all rights therein and thereto.

3. Said trade-mark representation of a maid or woman pouring from a can into a toilet bowl is a good and valid trade-mark, and the registrations thereof are good and valid.

4. Plaintiff's registered trade-marks are now and since the respective dates of registration have been in full force and effect.

5. Plaintiff's trade-mark representation of a maid or woman pouring from a can into a toilet bowl as used by plaintiff, or as registered in a variety of forms, is not merely descriptive of plaintiff's goods or of the character or quality of plaintiff's goods and is entitled to the protection afforded by the Trade-Mark Act of 1905 and the common law, and was properly registered under the Trade-Mark Act of 1905.

6. Neither plaintiff's picture trade-mark, nor any of the registrations thereof, have ever been abandoned.

7. Plaintiff's rights in said picture trade-mark, and the several registrations thereof, did not expire by operation of law upon the expiration of patents which plaintiff owned covering various compositions of a chemical toilet bowl cleaning powder.

8. The plaintiff's trade-mark and the registrations thereof have been infringed by the defendant in its use of display cards, leaflets, and newspaper advertising portraying a maid pouring from a can into a toilet bowl, but not in the use of a newspaper advertising portrayal of a hand pouring from a can into a toilet bowl.

9. The defendant has been guilty of unfair competition.

10. The Trade-Mark Act of 1946 by its express provisions has no application to this suit.

11. The plaintiff is entitled to judgment for injunctive and mandatory orders as prayed for, together with taxable costs.

Counsel will forthwith prepare and submit a draft of decree comformable to the foregoing.